[Crim. No. 3711.   Third Dist.   Oct 22, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. JONAS
MARQUEZ, Defendant and Appellant.

John Ross, under · appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris Maier, Assistant Attorney General, Raymond M. Momboisse and Daniel J. Kremer, Deputy Attorneys General, for Plaintiff and Respondent.

PIERCE, P. J.—After a court ·trial defendant was convicted of receiving stolen property. The principal contentions on appeal are (1) that prejudicial error was committed in admission into evidence of a statement made by defendant after his arrest under circumstances violating the *Escobedo-Dorado* rule (*Escobedo* v. *Illinois* (1964) 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977]; *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]); (2) that an illegal search and seizure produced the property stipulated to have been stolen; and (3) that proof that the goods had been stolen by someone other than the defendant is a necessary element of the crime of receiving stolen goods, and that the People, having failed to prove this, cannot support the judgment. We deny these contentions for reasons which will appear in the discussion following the statement of facts.

On June 8, 1964, two Stockton police officers in a patrol car stopped an automobile which was being driven without stoplights. One of them, Officer Tribble, asked the driver, the defendant, for his driver's license. Defendant did not have

one. He did, however, have other identification, and as he got out of the car to show this Officer Tribble noticed a quantity of clothing on the floorboard of the car upon which one of the other male occupants of the vehicle (there were two men and a woman) was resting his feet. The officer thought this "unusual," since the clothing appeared to be new.

When Tribble was about to issue a citation for the traffic violation, another occupant of the car, Linares, stated that the car belonged to him but that he had asked defendant to drive since he, Linares, had been drinking. Linares did not have a driver's license either.

Officer Tribble phoned the Stockton Police Department and ascertained from its record bureau there was a "stop" on defendant who was wanted for two charges of burglary. (There is nothing in the record indicating that these burglary charges were in any way identified with theft of clothing hereinafter related.) Defendant was arrested and handcuffed. The officer, remembering the clothing he had seen on the floorboard, decided to make a further search of the car. He asked consent, which was refused, but he opened the trunk of the car anyway, using the car keys which he had removed from the instrument panel. A large carton containing new clothing was found. The clothing was unaltered; the trousers were uncuffed. Sizes, prices and tags bearing the name of "Hexom's" were still affixed to the garments. The officer estimated the value of the clothing to be approximately $1,000.

Hexom's store had been burglarized on June 3, 1964. At the trial it was stipulated that the clothing found in defendant's vehicle had been stolen from that store.

After the clothing was found Linares denied that the automobile was his. Officer Tribble again used the radio, had the names of the other occupants of the car "run through" the records bureau and found they were not wanted.

At the trial, over objection, Officer Tribble was permitted to testify to his interrogation of defendant at the scene of the arrest and after the arrest, handcuffing and discovery of the stolen clothing. He had asked defendant where he had obtained the clothing and defendant said he had bought it in a Stockton bar from a Mexican whom he had known by his nickname, "Coco." Defendant said he had paid $80 for the clothes and that he had bought them because he thought the price was a bargain. Defendant had not been advised that he did not have to make any statement; neither was he advised of his right to counsel. He had not requested counsel.

After the arrest defendant was taken to the Stockton police station. The clothing was taken also. The other occupants of the car were not arrested. As the police car was driving away, defendant called out to Charlis Cervantes, the woman occupant of the car he had been driving, ''Those clothes are mine, baby.''

Tribble was the only witness called by the People at the trial. His testimony, plus the stipulation referred to above, constituted the whole case of the People.

Except for witnesses called by defendant for *voir dire* examination on the issue of the claimed illegal search and seizure, hereinafter to be discussed, defendant was the only witness who testified for the defense. His testimony was limited to his account of the purchase of the clothing from a Mexican in the Stockton bar. This testimony was similar in all material respects to the statement he had given Tribble, as testified to by the latter. On both direct and cross-examination, he insisted he had not stolen the goods and had not known the goods were stolen. He testified on cross-examination that although he had not known the goods were stolen he had bought them because they were a good bargain.

*People* v. *Dorado, supra,* 62 Cal.2d 338, holds that a defendant's statement taken by a police officer may not legally be introduced into evidence when at the time the statement is taken the following conditions exist: (1) the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect; (2) the suspect is in custody; (3) the authorities are carrying out a process of interrogation lending itself to eliciting incriminating statements; (4) the authorities have not effectively informed defendant of his right to counsel and of his absolute right to remain silent, and no evidence establishes that he has waived those rights. (*People* v. *Dorado*, 62 Cal.2d 338, 353-354 [42 Cal.Rptr. 169, 398 P.2d 361].)

As regards condition (2) of the *Escobedo-Dorado* rule, defendant was under arrest but the arrest was not as a suspect either for the theft of these particular goods or as one guilty of receiving them. The goods had not been discovered at the time the arrest was made. This raises a question which it is not necessary for us to decide here and we do not consider it.

It is a close question whether conditions (1) and (3) existed under the facts described above. At the time defendant's statement was made goods which obviously had been stolen from Hexom's store had been found in an automobile being driven

by defendant. One or all of four occupants of that car could have been responsible for their presence there. Defendant was the driver of the car but according to Linares who at first professed to be its owner defendant was only driving as an accommodation to Linares.

After the goods had been found and a course of questioning by the police officer had begun, it is arguable that it was then still a general inquiry which commenced with questions put to defendant only because the officer had just ascertained that defendant was a person wanted for burglary. Interrogation might just as well have started with Linares who had announced that he, Linares, was the owner of the automobile and who had changed his story after the clothing had been discovered. Even assuming the fact that defendant was "wanted" for burglary had focused suspicion on him, were the police officers thereafter undertaking a process of interrogation lending itself to eliciting incriminating statements? Or were they merely trying, starting with defendant, to give each occupant of the car an opportunity to explain the presence of the stolen goods in the car—or more particularly to explain his or her presence in the car which contained the stolen goods? (*United States* v. *Konigsberg* (3d Cir. 1964) 336 F.2d 844, 853; and see *People* v. *Stewart* (March 1965) 62 Cal.2d 571, 578 [43 Cal.Rptr. 201, 400 P.2d 97].) This determination of the intent of the interrogation is one which must be made by the court objectively. (*People* v. *Stewart, supra,* at p. 579.) Such determination as applied to the facts of this case is one as to which courts might reasonably differ. The trial judge, in admitting the statement, expressed an opinion that the questioning was still investigatory. We do not meet the problem of deciding the correctness of that determination because we do not have to.[1]

Even assuming, without deciding, that all conditions laid down in the *Escobedo-Dorado* rule existed here and that the admission into evidence of the statement was error, we

[1]After the foregoing had been written, our Supreme Court filed its decision (opinion by Justice Burke) in *People* v. *Cotter*, on October 1, 1965, 63 Cal.2d 386 [46 Cal.Rptr. 622, 405 P.2d 862]. The decision affirms a first degree murder conviction in which, after the defendant had informed the victim's husband he had killed his wife, after the body had been discovered, after a neighbor had seen the defendant running from the scene, after all that information had been received by the police, and after defendant had been arrested and was en route to the police station, one of the officers asked defendant what had happened. Defendant made an incriminating statement. It was held (on p. 393): ". . . Clearly, the statement made in the police car was not

would have to say that the error was not prejudicial. Since the statement was not a confession it was not prejudicial per se. (*People* v. *Dorado, supra,* 62 Cal.2d 338, 356-357; *People* v. *Hillery* (May 1965) 62 Cal.2d 692, 712 [44 Cal.Rptr. 30, 401 P.2d 382].) We examine the record, therefore, to determine whether the statement caused a miscarriage of justice under article VI, section 4½, of the California Constitution.

At the trial defendant expressly and emphatically denied he had had knowledge that the goods were stolen. If believed, the defendant's extrajudicial statement, coupled with his testimony, exonerated him. As in *Hillery, supra,* where the statement constituted an alibi, defendant's testimony was substantially similar to his statement.

True, the statement was improbable. But so was the testimony. The fact that defendant *did* know that the goods which he withheld were stolen was thoroughly established—without recourse to the statement. Defendant was driving a car containing goods of the value of approximately $1,000. It was not only clear that they had been stolen, but the goods from their tags showed from whom they had been stolen. Defendant had voluntarily shouted to his woman companion as he was being driven away that the clothing was his. That statement was not tainted. It was an admission that he claimed ownership of the goods. Under the circumstances a trier of fact would have had to be more than credulous not to have found defendant guilty.

Since there is neither a reasonable *probability* (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]), nor a reasonable *possibility* (*People* v. *Bostick* (June 1965) 62 Cal. 2d 820, 825 [44 Cal.Rptr. 649, 402 P.2d 529]; *Fahy* v. *Connecticut,* 375 U.S. 85 [84 S.Ct. 229, 11 L.Ed.2d 171]), that the court (the trier of fact here) but for the statement, would have reached a result more favorable to defendant, we hold that the admission of defendant's statement was not prejudicial.

Defendant contends that the discovery of the stolen goods was the result of an illegal search and seizure. ▮ A search which is reasonably made as an incident to a lawful arrest is

the product of a process of interrogation aimed at eliciting incriminating statements from defendant.'' 

In issuing this decision we do not await finality of *Cotter*. Clearly, if the interrogation carried on by the police in *Cotter* was not one designed to elicit an incriminating statement—and we imply no criticism of the finding—then the questioning of defendant by Officer Tribble in this case was not.

lawful. (*People* v. *Schellin*, 227 Cal.App.2d 245, 250 [38 Cal. Rptr. 593] ; *People* v. *Esters*, 220 Cal.App.2d 917, 920 [34 Cal. Rptr. 264].) If the arrest here was lawful then the search and seizure were also lawful. ■ "Reasonable or probable cause for arrest without a warrant requires such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain honest and strong suspicion that the person arrested is guilty of crime. [Citation.] ■ As there is no exact formula for the determination of reasonable cause, each case must be determined on its own facts and circumstances. [Citations.]" (*People* v. *Schellin*, *supra*, p. 250.)

■ The arrest here without a warrant was reasonable. The officers properly stopped a car without stoplights. Defendant was operating the car without a driver's license. When he got out of the car to show his identification the officer observed new clothing lying on the floorboard of the car upon which one of the occupants was resting his feet. This was a suspicious circumstance. The radioed call and check of the record bureau of the Stockton Police Department showed that defendant was wanted for burglary. Police officers may rely upon information so received. (See *People* v. *Schellin*, *supra*, 227 Cal.App.2d 245, 251; *People* v. *Lopez*, 196 Cal.App.2d 651 [16 Cal.Rptr. 728] ; *People* v. *Stewart*, 189 Cal.App.2d 176 [10 Cal.Rptr. 879] and cases cited.) It appears that the information in the possession of the Stockton Police Department that defendant was wanted was erroneous. A Sacramento County warrant for defendant's arrest originally broadcast in 1963 had actually been cancelled. The State Bureau of Criminal Identification and Investigation had not been apprised of the cancellation and, therefore, neither had the Stockton Police Department. ■ But in determining whether or not an arresting officer acts reasonably in believing that the person arrested had committed a felony the court looks only to the facts and circumstances presented to the officer when the arrest was made—not to something later discovered. (*People* v. *Schellin*, *supra*, 227 Cal.App.2d 245, 250.)

The arrest was legally made and the search and seizure following was also proper.

■ Defendant makes a third contention. He urges that a defendant cannot be found guilty of receiving stolen goods unless the People have affirmatively proven (as a necessary element of the crime) that someone other than defendant was the thief. Language in certain cases, hereinafter to be cited,

gives support to that view. In all of these cases the language was dictum. In our opinion the proposition is unsound.

The correct rule is that where it is affirmatively established that the defendant *is* the thief he may not be prosecuted under Penal Code section 496, subdivision 1, if the concealment and withholding of the stolen goods have been a part of his activities connected with the theft. (*People* v. *Tatum* (1962) 209 Cal.App.2d 179 [95 Cal.Rptr. 832].)

As a matter of statutory interpretation, to hold that section 496, subdivision 1, requires the state to assume the burden of proving that a defendant whom it has found withholding goods which he knew to be stolen was not the thief is to read something into the statute which is not there. Penal Code, section 496, subdivision 1, provides as follows: ''Every person who buys or receives any property which has been stolen or which has been obtained in any manner constituting theft or extortion, knowing the same to be so stolen or obtained, or who conceals, withholds or aids in concealing or withholding any such property from the owner, knowing the same to be so stolen or obtained, is punishable by imprisonment in a state prison for not more than 10 years, or in a county jail for not more than one year.''

There is not a word in the statute which requires the state to prove affirmatively that the thief was someone other than the defendant. The elements described as being necessary of proof are: (1) that the property was stolen, (2) that the defendant received or concealed or withheld the goods, and (3) that he knew that the goods were stolen.

The unfortunate assumption that there is an obligation by the state to prove as a necessary element of the crime that the original theft of the goods was by someone other than the accused stems, in California, from a statement in *People* v. *Jacobs* (1925) 73 Cal.App. 334 [238 P. 770], which statement has been repeated in a number of subsequent cases, including *People* v. *Bausell* (1936) 18 Cal.App.2d 15 [62 P.2d 774]; *People* v. *Foogert* (1948) 85 Cal.App.2d 290 [193 P.2d 14]; *People* v. *Kot* (1959) 171 Cal.App.2d 9 [339 P.2d 899]. In not one of these cases was that the holding of the court. All of them affirmed a conviction, recited the statement from *Jacobs, supra,* and found that there was evidence—sometimes pretty thin—(other than on the extrajudicial statement of the defendant) to establish the corpus delicti, and thus sufficient to support a verdict that the accused was not the thief. An analysis of the *Jacobs* case, however, may point up the fallacy

of adherence to—to us—an unsound proposition. There a Mrs. Johnson had a garage for rent. Defendant rented it and later the same day stored therein an automobile. The car had been stolen. It was left there for two months. The police, having learned in some manner not disclosed that the stolen car was in the garage, waited for, accosted and arrested defendant on one of his visits to the garage. *There was no evidence whatever produced by the prosecution that defendant had not stolen the car.* On the contrary, such evidence as had been adduced by the state pointed to the fact that he had stolen it because it had been brought by him to the garage within a few hours after it had been stolen. The judgment was affirmed solely upon the ground that the defendant had foolishly elected to take the stand and prove an alibi.

We could, of course, base our decision here upon the same reasoning and say that although the prosecution had failed to establish the corpus delicti, the defendant proved it when he took the stand and denied the theft of the clothing.

Such reasoning weasels. It rests the vitality of conviction of a "fence" upon the blunders of the defense. It argues that whenever the prosecution is unable to prove a negative, i.e., unable to prove that the "fence" was not the thief, it fails to prove a case and the "fence" must go free unless he or his counsel is stupid enough to supply the missing link. In many cases, perhaps in most, since a negative is frequently difficult to prove, a conviction will be impossible unless the defendant convicts himself.

The facts of this case illustrate that statement. The goods were found in defendant's possession. Those goods were of a nature and discovered under conditions where it was not only clear that they were stolen but equally clear that the person possessing them knew that they were stolen—even knew whose goods they were. It was, therefore, demonstrably certain that defendant was concealing and withholding stolen goods from the true owner. Since the theft had occurred on June 3, 1964, in the eastern end of Sacramento County and the goods were not discovered until five days later, it was also demonstrably certain that they were not being concealed and withheld as a part of any activities connected with the theft or getaway. Yet the People did not produce the slightest evidence to establish the corpus delicti if a necessary element of the crime of violation of Penal Code section 496, subdivision 1, is proof that defendant did *not* steal the clothing. This was not only the district attorney's dilemma in this case.

More frequently than not it will be the situation when the theft constitutes a burglary and there are no witnesses either to the taking of the goods or to the flight which follows the taking.

Difficulty of proof, of course, does not justify court-created bypasses of the constitutionally-guaranteed right of every person accused of crime to have the state prove each element of the crime charged beyond reasonable doubt. The guaranty, however, does not extend to justify court-created elements of crimes not contained in the Legislature's definition of the crime.

Defendant relies upon *People* v. *Tatum, supra,* 209 Cal.App. 2d 179, as sustaining his position. As we have indicated above, it does not do so. There defendant had been tried and acquitted of stealing a trailer. Thereafter he was tried and convicted of having received, concealed or withheld the stolen trailer with knowledge of the fact that it was stolen. The jury had been instructed to the effect that if it found defendant to have been the thief he could still be found guilty of violation of Penal Code section 496, subdivision 1, if he continued to conceal and withhold the trailer after movements thereof connected with the perpetration of the theft had been completed. The court did not reject that instruction as a misstatement of the law but found (per Justice Burke) at pages 184-185: ". . . [A] review of the testimony reveals there was no evidence of concealment independent of that involved in the theft. In the absence of such evidence it was error to instruct the jury that they could find defendant guilty of concealment even though they believed he had stolen the trailer.

"Had there been evidence of acts of concealment entirely separate and apart from the theft and sufficiently removed therefrom to constitute an independent course of conduct, then an instruction which clearly spelled out such distinction could properly have been given."

The court held (on p. 184) : "[I]n the absence of facts indicating a complete divorcement of the concealing activities from the course of conduct of the thief in the initial concealing of the property stolen by him, a thief may not be found guilty of concealment in violation of section 496, subdivision (1)."

Nothing in the *Tatum* case holding suggests that the state must prove that a defendant is not the thief. The court's opinion (on p. 183) states that the section we interpret "is directed at the traditional 'fence' and at those who lurk in the background of criminal ways in order to provide the thieves

with a market or depository for their loot." We have no doubt that the Legislature so intended. But it did not intend that the traditional fence should find security from conviction whenever the prosecution is unable to prove that the thief was someone other than the defendant.

Defendant argues that section 496, subdivision 1, must be construed to require proof that defendant was not the thief as a necessary element of the crime because the statute refers to a person who "receives" stolen goods and the word "receive" implies two persons, to the end that it must be proved that defendant received the goods from somebody. (*People* v. *Bausell, supra,* 18 Cal.App.2d 15.) This argument overlooks the fact that the section refers not only to the receipt of stolen goods but in the disjunctive also to concealment and withholding.

The judgment is affirmed.

Friedman, J., and Regan, J., concurred.