[Crim. No. 3222. Fourth Dist., Div. One. July 25, 1968.]

THE PEOPLE, Plaintiff and Appellant, v. CHRISTOPHER HAWXHURST, Defendant and Respondent.

Cecil Hicks, District Attorney, and Melvin L. Jensen, Deputy District Attorney, for Plaintiff and Appellant.

Lambros, Lund & Mellas, Eliot F. Feldman and Nicholas C. Mellas for Defendant and Respondent.

WHELAN, J.—The People appeal from an order granting defendant's motion to dismiss under Penal Code, section 995.

Defendant had made also a motion to suppress evidence under section 1538.5, Penal Code in support of which his counsel stated he wished to have defendant testify. Without hearing defendant testify, the court heard and ruled on the motion under section 995, Penal Code; did not pass on the other motion.

## FACTS

The following facts were brought out at the preliminary hearing:

At approximately 12:30 to 12:40 a.m. on December 12, 1967, Officer Tim Grundman of the Newport Beach Police Department observed defendant Christopher Hawxhurst walking eastbound on the sidewalk of East Ocean Front Boulevard in that city. Grundman was aware that there had been an assault with a deadly weapon committed some 40 to 50 minutes before this in the 1700-block of West Balboa Boulevard. The suspect had been described as a white adult male, 18 to 20 years of age, wearing a mask and a brown jacket, and using a handgun. Hawxhurst appeared to be between 18 and 20 years of age, was wearing a jacket, and was coming from the general area of the assault.

Grundman stopped defendant and told him there had been an assault with a deadly weapon committed in the 1700-block of West Balboa, and that he roughly fit the description of the suspect. Defendant stated he knew this because he had seen police vehicles in that area. Defendant gave his name and address to Grundman, the address being one east of the point of detention; defendant said he had come from a location about five blocks west of where the assault had been committed. Grundman then asked defendant if he might search him for weapons because a hand-gun had been used in the crime. Defendant stated, "Go ahead and search." Grundman first patted defendant down through the back and hips; then had defendant turn around so as to face Grundman and lift his arms. When defendant put his arms up, his shirt bottom, being outside his trousers, came up so as to disclose to view the upper portion of a clear plastic object or objects thrust into his waistband across the full width of his abdominal area. The officer saw and there was openly visible not only the

plastic object or objects but, through them, their contents, which was a greenish brown vegetable matter. Grundman, from his training and experience, at once recognized the material as marijuana. When asked what it was, defendant stated, "You've got me." Upon request, defendant removed three plastic bags from his waistband. Their contents in fact were marijuana.

The record does not show whether the officer made a general exploratory search of defendant after seeing the marijuana; at some point chewing gum and cigarettes from the jacket pockets were brought out, whether by defendant or the officer is not established.

■ DID THE ARRESTING OFFICER HAVE REASONABLE CAUSE TO MAKE A CURSORY WEAPONS SEARCH?

Yes. Our courts have consistently held that circumstances short of probable cause to make an arrest may still justify an officer's stopping pedestrians or motorists on the streets for questioning. If the circumstances warrant it, he may, in self-protection, request a suspect to submit to a superficial search for concealed weapons. Should the investigation then reveal probable cause to make an arrest, the officer may arrest the suspect and conduct a reasonable incidental search. (*People* v. *Mickelson,* 59 Cal.2d 448, 450-451 [30 Cal.Rptr. 18, 380 P.2d 658]; see also *People* v. *Garrett,* 238 Cal.App.2d 324 [47 Cal. Rptr. 731]; *People* v. *Randal,* 226 Cal.App.2d 105, 108 [37 Cal.Rptr. 809]; *People* v. *Jones,* 176 Cal.App.2d 265 [1 Cal. Rptr. 210]; *People* v. *Rice,* 259 Cal.App.2d 399 [66 Cal. Rptr. 246].)

■ Before a state rule governing police conduct may be struck down, it must appear that neither Congress nor a state legislature could authorize it. If a state adopts rules of police conduct consistent with the requirements of the Fourth Amendment and if its officers follow those rules, they do not act unreasonably within the meaning of the amendment. (*People* v. *Mickelson, supra,* 59 Cal.2d 448, 452.)

The last stated proposition enunciated in *People* v. *Mickelson* has had recent approval by the Supreme Court of the United States. In *Terry* v. *Ohio,* 392 U.S. 1 [20 L.Ed. 2d 889, 88 S.Ct. 1868]; and *Peters* v. *New York,* 392 U.S. 40 [20 L.Ed.2d 917, 88 S.Ct. 1889, 1912], both decided on June 10, 1968, that court dealt respectively with a court-declared rule of Ohio and a New York statutory rule permitting a police officer to stop and interrogate a person in a public place and make a pat-down search for weapons where

circumstances, viewed according to an objective standard of judgment, sanctioned such action.[1]

In neither of the cases under review by the Supreme Court of the United States was the officer informed of the actual commission of a crime by an unidentified person armed with a hand-gun who was being hunted by the police. In *Terry*, the officer strongly suspected that a crime of violence was being planned; in *Peters*, he suspected that a felony had been attempted.

In the case at bench, a crime of violence was committed by a man 18 to 20 years old armed with a hand-gun and whose facial description had not been ascertained; it would not be unreasonable to suppose that he might have remained concealed in the neighborhood of the crime until an opportunity presented itself to escape. Under such circumstances, it would not be unreasonable to interrogate all persons within that area who were abroad unaccompanied and were of the given age and sex: and, with information that the wanted person was armed with a hand-gun to make a cursory weapon search of the permitted kind. So far the action of Officer Grundman was reasonable; and as a part of that search it was reasonable that defendant should have been required to raise his arms, not only for the officer's protection but also to permit a pat-down under the arms.

The search for weapons would not be made unreasonable by the knowledge that the wanted man had been armed and that

---

[1] 'The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard; would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?

' . . . . . . . .

'[T]here must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

' . . . . . . . .

'We cannot say his decision at that point to seize Terry and pat his clothing for weapons was the product of a volatile or inventive imagination, or was undertaken simply as an act of harassment . . .'' (*Terry* v. *Ohio* [June 10, 1968], 392 U.S. 1, 21-22, 27-28 [20 L.Ed.2d 889, 906, 909-910, 88 S.Ct. 1868, 1880, 1883].)

a search for weapons might reveal an instrumentality of the crime under investigation.

The purely adventitious uncovering of the plastic bags as the result of defendant's raising of his arms does not affect or invalidate the essential reasonableness of the officer's conduct.

In *Peters* v. *New York, supra,* 88 S.Ct. 1912, the weapons search revealed the presence in the defendant's pocket of an object that might have been a weapon, but which proved to be, when brought to view, a set of burglar's tools. The tools so found were held to be admissible in evidence.[2]

 In the case at bench, the contraband accidentally observed in the course of a reasonable search for weapons was properly admitted into evidence by the committing magistrate.

The committing magistrate, in passing upon the reasonableness of the officer's conduct, had the opportunity to see defendant; presumably he could have formed an opinion from that viewing whether the officer should reasonably have immediately excluded defendant upon the basis of his appearance from consideration as a possible suspect. The committing magistrate could have formed an opinion as to the good faith of the officer in making the search for a weapon; for while the good faith belief of the officer is not alone sufficient to justify such a search, evident bad faith would vitiate the claim of reasonableness in the search.

*Sibron* v. *New York* 392 U.S. 40 [20 L.Ed.2d 917, 88 S.Ct. 1889, 1912], decided by the United States Supreme Court on June 10, 1968, merely because it involved a narcotics conviction based upon illegally seized evidence, should not control the decision in the case at bench, since in *Sibron* the arresting officer clearly was engaged only in a search for narcotics.

In *People* v. *Ross,* 223 Cal.App.2d 196, 197 [35 Cal.Rptr. 754], cited by defendant, it was noted: "Defendant does not challenge the propriety of the conduct of the police up to the time of the search of his pockets which produced the marijuana."

---

[2] "Officer Lasky did not engage in an unrestrained and thoroughgoing examination of Peters and his personal effects. He seized him to cut short his flight, and he searched him primarily for weapons. While patting down his outer clothing, Officer Lasky discovered an object in his pocket which might have been used as a weapon. He seized it and discovered it to be a potential instrument of the crime of burglary." (*Sibron* v. *New York* [June 10, 1968], 392 U.S. 40, 67 [20 L.Ed.2d 917, 937, 88 S.Ct. 1889, 1905].)

In the case at bench, the marijuana was not discovered in a search of defendant's pockets.

In holding that the weapons search was reasonable under the circumstances, we do not hold that the expressed consent of defendant extended beyond the making of a pat-down search for weapons that would have been reasonable without the consent.

Order reversed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 18, 1968.