[Civ. No. 35206.  Second Dist., Div. Three.  Dec. 1, 1969.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SANTA BARBARA COUNTY,
Respondent;
MICHAEL HOWARD SAARI, Real Party in Interest.

**COUNSEL**

David D. Minier, District Attorney, A. Barry Cappello and Stanley M. Roden, Deputy District Attorneys, for Petitioner.

George P. Kading, County Counsel, and Robert D. Curiel, Assistant County Counsel, for Respondent.

James M. Slater for Real Party in Interest.

## OPINION

**COBEY, Acting P. J.**—The People, by means of a petition for writ of prohibition, have asked us to review, pursuant to Penal Code section 1538.5, subdivision (o), the trial court's order, after an evidentiary hearing, suppressing all of the evidence obtained by three sheriff's deputies from the Real Party in Interest, Michael Howard Saari, on the basis that this evidence was obtained by means of an unconstitutional search and seizure. We do not think it was and, therefore, appropriate relief by writ of mandate will be granted the People. (Cf. *Stapleton* v. *Superior Court,* 70 Cal.2d 97, 104 [73 Cal.Rptr. 575, 447 P.2d 967].)

### The Facts

Just prior to 6 p.m. on April 22, 1969, the Santa Barbara sheriff's office received a telephone call from the FBI in Monterey, California, informing them that an anonymous informer had told the FBI that a white male, about 22 to 23 years old, with short blond hair, a surfer type, approximately 5 feet 11 inches tall and approximately 165 pounds in weight, wearing a sports suit, was due to arrive in Santa Barbara on Flight 240 of the Cal-State Airlines at about 6:25 p.m., that he was armed with a .22 caliber pistol and was known to be violent, and he would be carrying approximately 26 kilos of marijuana in two suitcases. This information was immediately passed on to Detective Prince of the narcotics detail of the sheriff's office.

Detective Prince and his partner, Detective Piceno, to whom he relayed this information, left immediately for the Santa Barbara airport where they met Captain Honey of the same office at about 6:15 or 6:20 p.m. At approximately 6:40 p.m. Detective Piceno saw three persons come off the designated plane and only Saari in appearance matched the detailed description which Piceno had received from Prince. To Piceno, Saari appeared to be approximately 22 years of age, a surfer type with short blond hair. He was wearing a sports coat and slacks.[1] About three minutes later Piceno saw Saari pick up two suitcases and enter the terminal with them. Saari then went to a public telephone booth in the terminal about 25 or 30 feet from where he left his two suitcases.

The three officers, dressed generally in rough civilian clothes,[2] started toward the booth with their hand guns drawn. Two of the officers were abreast and one was a few feet behind them. Saari was talking over the

---

[1]The other two persons appeared to be a husband and wife approximately 45 to 50 years of age.

[2]Captain Honey was dressed in a gray dress suit.

telephone with his back to the officers and his head turned away from them. Some 15 to 20 feet from the phone booth Detective Prince yelled to Saari to freeze. When Saari did not respond immediately Prince repeated the command and all three officers quickened their pace. Saari put down the telephone's receiver which he was holding in his left hand and turned toward the officers. As he did so he started to reach quickly into one of the pockets of his jacket. By this time the officers were upon him with their guns to his head. One said, "Don't move, you SOB or we will blow your brains out."[3]

The officers forcibly removed Saari from the telephone booth. Detective Prince then subjected him to a spread eagle pat-down or cursory search from head to foot. In the course of this search Prince first felt from the outside of Saari's clothing a hard object in his right inside jacket pocket. Prince reached in and removed from this pocket a clip-loaded small caliber automatic pistol. He then continued his pat-down search for further weapons and felt a second hard oblong object in Saari's left outside jacket pocket. He reached inside this pocket and pulled out a small leather pouch from which protruded the bowl of a pipe. He looked into the bowl, saw a residue there and gave the pipe to his partner, Piceno, who visually examined and smelt the residue in the bowl. This was a gummy substance. Piceno, an expert in narcotics detection, determined that it appeared to be hashish or marijuana resin. Meanwhile, Prince opened up the pouch, turned it upside down and a packet of tin foil fell from it.[4] Prince opened up the packet and showed its contents to his partner who pronounced this to be hashish as well. The remainder of the pat-down was unproductive.

After Prince had completed his pat-down search of Saari he arrested and handcuffed him and advised him of his constitutional rights as required by *Miranda* v. *Arizona,* 384 U.S. 436[5] [16 L.Ed.2d 694, 86 S.Ct. 1602, 10

---

[3]The foregoing account of the officers' approach to the telephone booth is based on the resolution by the trier of fact of the conflict in testimony regarding this matter between the two testifying officers on the one hand, and two airline employees who witnessed the incident on the other. This resolution is, of course, binding upon us.

[4]According to Piceno hashish is usually wrapped in tin foil.

[5]The *Miranda* warnings were given and Saari's waiver was taken in the following fashion:

". . . 'You have the right to remain silent. Anything that you say can and will be used against you in a court of law. You have the right to talk to a lawyer and have him present with you while you are being questioned. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning, if you wish one. Do you understand each of these rights that I have explained to you? . . . A . . . Yes, I understand.' "

These were sufficient. (*People* v. *Johnson,* 70 Cal.2d 541, 557 [75 Cal.Rptr. 401, 450 P.2d 865].)

A.L.R.3d 974]. Prince and his partner then took Saari over to where Saari's suitcases and Captain Honey were. Captain Honey asked Saari, "Are these yours?" Saari replied, "Yeah, there's 26 bricks in them."[6] Thereupon Prince opened up one of the suitcases and found in it approximately 12 kilos of marijuana. The officers then took Saari with them to the sheriff's office where the officers opened the other suitcase and found another 13 kilos of marijuana.

The Search and Seizure
Were Constitituional

According to its memorandum opinion the trial court ordered the suppression of all the evidence obtained by the search and seizure of Saari's person and suitcases on the ground that the only justification the officers had was the information supplied the FBI in Monterey by an anonymous informer and that the officers, from the testimony of one of them, "were bound to search" Saari's suitcases on this basis alone.

■ We disagree. Prior to their search and seizure of Saari the officers had more upon which to act then merely the information supplied them through the FBI from the anonymous informer. Just as in *Draper* v. *United States,* 358 U.S. 307, 312-313 [3 L.Ed.2d 327, 331-332, 79 S.Ct. 329], they had by visual observation of Saari confirmed the accuracy of much of this detailed information. The initial unreliability of the informer and the incompleteness of their personal corroboration of the information supplied by him may have prevented them from having probable cause to arrest Saari when they saw him get off the airplane with his suitcases, (see *People* v. *Chavez,* 275 Cal.App.2d 54, 56-57 [79 Cal.Rptr. 701], hear. den.) but certainly, it gave them probable cause to stop him in the terminal for the purpose of investigating the truth of the report they had received concerning his alleged criminal activity. (See *People* v. *Mickelson,* 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Manis,* 268 Cal.App.2d 653, 658-659 [74 Cal.Rptr. 423].) ■ Since that report, informed them as well that he was armed with a .22 caliber pistol and known to be violent, and since, as just stated, they had by personal observation verified the accuracy of this report in several other particulars, they acted reasonably in subjecting Saari to an immediate pat-down search for weapons upon their seizure of him. The first thing uncovered by the search was a concealed small caliber automatic pistol. Penal Code section 12025 makes

---

[6]As the trial court recognized this statement of Saari's being a volunteered one, it was not within the protection of *Miranda.* (See *Miranda* v. *Arizona,* 384 U.S. 436, 478 [16 L.Ed.2d 694, 726, 86 S.Ct. 1602, 10 A.L.R.3d 974].)

the carrying of such a firearm upon the person without the requisite license therefor a misdemeanor. The officers, therefore, had probable cause to arrest Saari immediately upon their discovery of this weapon.[7] (Pen. Code, § 836, subd. (1); *People* v. *Tarkington,* 273 Cal.App.2d 466, 468 [78 Cal.Rptr. 149].) ■ The remainder of the search of Saari's person was justified as incidental to his arrest. (Cf. *People* v. *Marshall,* 69 Cal.2d 51, 61 [69 Cal.Rptr. 585, 442 P.2d 665].) Finally, the slight delay in and the slight change in the place of the seizure of part of the marijuana from that of the arrest was not unreasonable under the circumstances of this case. (*People* v. *Lurie,* 257 Cal.App.2d 98, 103 [64 Cal.Rptr. 637], hear. den.; cf. *People* v. *Webb,* 66 Cal.2d 107, 126 [56 Cal.Rptr. 902, 424 P.2d 342, 19 A.L.R.3d 708].

Let a peremptory writ of mandate issue directing the respondent court to annul its order suppressing evidence in the case entitled, "The People of the State of California v. Michael Howard Saari" and numbered in its files 85245, and to make a new order denying Saari's motion to suppress this evidence.

Allport, J., and Feinerman, J. pro tem.,* concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied January 28, 1970. Peters, J., was of the opinion that the petition should be granted.

---

[7] This is so because the burden of proof is upon the carrier of such a weapon to show his license to carry it. (*People* v. *Williams,* 184 Cal.App.2d 673, 675 [7 Cal. Rptr. 604].) The fact that the arresting officer may have been mistaken in his subjective intent regarding the arrest is without legal consequence. (See *People* v. *Wright,* 273 Cal.App.2d 325, 335 [78 Cal.Rptr. 75].)

*Assigned by the Chairman of the Judicial Council.