12 Cal.App.3d 909 (1970)
91 Cal. Rptr. 145
PETER JESS OJEDA, Petitioner,
v.
THE SUPERIOR COURT OF MONTEREY COUNTY, Respondent; THE PEOPLE, Real Party in Interest.
Docket No. 28263.
Court of Appeals of California, First District, Division One.
November 12, 1970.
*912 COUNSEL
Harkjoon Paik, Public Defender, and Frank W. Dice, Deputy Public Defender, for Petitioner.
No appearance for Respondent.
Thomas C. Lynch, Attorney General, Derald E. Granberg, Jerome C. Utz and John T. Murphy, Deputy Attorneys General, for Real Party in Interest.
OPINION
SIMS, J.
Petitioner, following a preliminary examination, has been charged in an information with possession of heroin and possession of narcotic paraphernalia in violation of sections 11500 and 11555 of the Health and Safety Code. By his petition for a writ of prohibition he seeks review of an order of the respondent court which denied his motion to suppress evidence. He claims that an uncorroborated police broadcast received by patrol officers in the field, which was unsubstantiated in court, was insufficient to establish reasonable cause for his arrest and the accompanying search and seizure of the evidence upon which the charges are based. An alternative writ of prohibition was issued and return has been made and hearing held thereon.
It is determined that irrespective of the propriety of the action of the officers in the field, the prosecution in presenting the fruits of such an arrest and search, is required to, and has failed to, produce evidence to show that the officer who originated the broadcast had reasonable cause to believe that the petitioner had committed a felony. The People's argument that the evidence shows that the arrest and attendant search may be justified by a right to detain for investigation, followed by corroborating circumstances, is likewise rejected for lack of proof of the nature and origin of the report giving rise to the claimed right to detain. It is further concluded *913 that the proper relief for petitioner is by writ of mandate rather than prohibition.
At the hearing on the motion to suppress it was stipulated that the petitioner's arrest was effected without a warrant, that there was no search warrant for the vehicle involved, and that there was no warrant or search warrant for any other occupants of the vehicle. No new testimony was offered, and the motion was submitted on the transcript of the testimony taken at the preliminary examination.
At the preliminary examination the prosecution offered the testimony of a highway patrol officer who stopped and detained the vehicle driven by defendant, and of a Monterey County Deputy Sheriff who appeared on the scene, and placed the petitioner and others under arrest. From their testimony the following appears:
At some time prior to 4:45 p.m. on February 10, 1970, the San Luis Obispo office of the California Highway Patrol broadcast a BOL (be on the lookout) for a vehicle of a description similar to the appearance of the station wagon which was ultimately stopped. This transmission was apparently picked up by Patrolman Lukens, who allegedly reported to the Monterey office that he, in civilian clothes, was following the described vehicle northbound into Monterey County. As relayed by the Monterey office and received by the witness, Patrolman Hagen, the broadcast indicated that a 1959 Chevrolet white-over-green station wagon with a designated license number, and occupied by four persons, was northbound from San Ardo followed by a highway patrol car and a patrolman in civilian clothes; and that the subject of the broadcast was wanted for robbery of a San Luis Obispo service station. The patrolman checked with the dispatcher to ascertain whether weapons were used in the reported robbery. His testimony concerning her answer is conflicting as to whether she answered that they were not, or that she did not know. A broadcast of similar import, which was made by the Monterey County communications radio in Salinas, was heard by the testifying sheriff, Garcia, at 5:05 p.m. This broadcast indicated it was unknown whether the suspect was armed or not.
Cross-examination of Garcia at the preliminary examination brought out that after the arrest and search he had been made aware that there was an error in the transmission of the reported crime somewhere between the San Luis Obispo Police Department and the highway patrol in San Luis Obispo County or Monterey County; that this error resulted in the offense being broadcast as a robbery when in fact it was actually perpetrated as a misdemeanor theft and that at the time of testifying, as distinguished from the time of the arrest when he relied upon the provisions of *914 subdivision 3 of section 836 of the Penal Code,[1] he had no reason to believe that the petitioner had committed a robbery as had been originally reported.
Patrolman Hagen, followed by a second patrolman, King, proceeded south from King City to San Lucas and turned around to observe northbound traffic. Upon viewing a car answering the description, with four occupants, and a patrol car driven by Patrolman Lukens from Ventura in plain clothes following it, he pursued and stopped the vehicle at 5:10 p.m. about a half mile north of San Lucas. The petitioner who was driving and his three companions were ordered out of the car by Hagen and the second patrolman. Hagen had petitioner place his hands on the top of the car and made a precautionary search for weapons. When patting petitioner down he felt something heavy and heard a clank upon hitting his left coat pocket. He put his hand in the pocket and discovered there was no weapon involved, but a large amount of quarters, nickels and dimes which he left in the pocket.[2]
The patrolman felt a hard object in the petitioner's right front pants pocket, which upon examination proved to be not a weapon, but something all wrapped up. He put it back in the petitioner's pocket. The petitioner was handcuffed behind the back, and laid, standing, over the back of the trunk of the car. Hagen observed petitioner reaching his cuffed hands around to his front right pocket. The petitioner removed the package about halfway out of his pocket. The patrolman took it all the way out, placed it in the petitioner's left coat pocket, and laid him on top of it so he could not get it back out again.
Meanwhile, about three to five minutes after the stop, Deputy Sheriffs Garcia and Hall, who had heard Hagen's report that he had stopped the suspect vehicle while en route to San Lucas, arrived on the scene. The patrolmen turned the suspects over to the sheriff's deputies in accordance with existing policy. (Cf. Pen. Code, § 830.1 with § 830.2.) Hagen told Garcia that petitioner had large amounts of money in his pocket, but said nothing *915 concerning the contents of the package. Patrolman Lukens advised Garcia that the San Luis Obispo broadcast described the apparel of the suspect and indicated that there had been a large amount of money taken in the robbery.
Deputy Garcia concluded that the money was loot from the robbery and decided to take it into evidence right away. With the assistance of Officer King he removed and made an inventory of the contents of all of petitioner's pockets. All other items were first removed from petitioner's pockets, and then the coins and wad of bills were taken from the right hand coat pocket (see fn. 1 above). In the left hand coat pocket Garcia found the package which proved to be wrapped in plastic, like a sandwich bag, containing what felt like a spoon wrapped in a paper towel. The officer did not have any idea what was in it. On opening it he found a charred spoon, a makeshift syringe with a hypodermic needle at the end, and a packet containing a white-tan substance. The officer testified that the articles appeared to be a narcotics paraphernalia kit, and it was stipulated for the purpose of the preliminary hearing that the substance in the packet was heroin.
After the items were taken from petitioner's person and listed he was advised that he was being placed under arrest for investigation of robbery in San Luis Obispo, and for the charges giving rise to these proceedings.

I
(1) As a general proposition a police officer is entitled to rely on information which reaches him through official channels. (People v. Terry (1970) 2 Cal.3d 362, 394 [85 Cal. Rptr. 409, 466 P.2d 961]; People v. Lara (1967) 67 Cal.2d 365, 374 [62 Cal. Rptr. 586, 432 P.2d 202]; People v. Ross (1967) 67 Cal.2d 64, 70 [60 Cal. Rptr. 254, 429 P.2d 606] (reversed on other grounds 391 U.S. 470 [20 L.Ed.2d 750, 88 S.Ct. 1850]); People v. Webb (1967) 66 Cal.2d 107, 112 [56 Cal. Rptr. 902, 424 P.2d 342, 19 A.L.R.3d 708]; People v. Schader (1965) 62 Cal.2d 716, 722 [44 Cal. Rptr. 193, 401 P.2d 665]; People v. Honore (1969) 2 Cal. App.3d 295, 299 [82 Cal. Rptr. 639]; People v. Graves (1968) 263 Cal. App.2d 719, 736 [70 Cal. Rptr. 509]; People v. Marquez (1965) 237 Cal. App.2d 627, 633 [47 Cal. Rptr. 166]; People v. Estrada (1965) 234 Cal. App.2d 136, 152 [44 Cal. Rptr. 165, 11 A.L.R.3d 1307]; and People v. Schellin (1964) 227 Cal. App.2d 245, 251 [38 Cal. Rptr. 593].)
Nevertheless, it is now well established that "although an officer may make an arrest based on information received through `official channels,' the prosecution is required to show that the officer who originally furnished *916 the information had probable cause to believe that the suspect committed a felony." (People v. Madden (1970) 2 Cal.3d 1017, 1021 [88 Cal. Rptr. 171, 471 P.2d 971]. See also, Remers v. Superior Court (1970) 2 Cal.3d 659 [87 Cal. Rptr. 202, 470 P.2d 11]; People v. Lara, supra, 67 Cal.2d 365, 374; Lockridge v. Superior Court (1969) 275 Cal. App.2d 612, 617-620 [80 Cal. Rptr. 223]; and cases collected in People v. Adkins (1969) 273 Cal. App.2d 196, 198-199 [78 Cal. Rptr. 397].) The distinction between the right to arrest in the field, and the subsequent justification of that arrest and the use of the evidence obtained by that arrest was noted in Remers v. Superior Court, supra, as follows: (2) "It is well settled that while it may be perfectly reasonable for officers in the field to make arrests on the basis of information furnished to them by other officers, `when it comes to justifying the total police activity in a court, the People must prove that the source of the information is something other than the imagination of an officer who does not become a witness.' (People v. Adkins, 273 Cal. App.2d 196-198 ...; People v. Lara, 67 Cal.2d 365, 374 ...; People v. Rice, 253 Cal. App.2d 789, 792 ...; People v. Pease, 242 Cal. App.2d 442, 448-450 ...; People v. Harvey, 156 Cal. App.2d 516....) To hold otherwise would permit the manufacture of reasonable grounds for arrest within a police department by one officer transmitting information purportedly known by him to another officer who did not know such information, without establishing under oath how the information had in fact been obtained by the former officer. (Cf. People v. Adkins, supra, 273 Cal. App.2d 196, 198; People v. Harvey, supra, 156 Cal. App.2d 516, 523 [319 P.2d 689].) `If this were so, every utterance of a police officer would instantly and automatically acquire the dignity of official information; "reasonable cause" or "reasonable grounds," ... could be conveniently fashioned out of a two-step communication; and all Fourth Amendment safeguards would dissolve as a consequence.' (People v. Pease, supra, 242 Cal. App.2d 442, 449 [51 Cal. Rptr. 448].)" (2 Cal.3d at pp. 666-667. Accord: People v. Madden, supra; and, in addition to the cases cited in Remers, see People v. Escollias (1968) 264 Cal. App.2d 16, 18-19 [70 Cal. Rptr. 65]; and People v. Hunt (1967) 250 Cal. App.2d 311, 314 [58 Cal. Rptr. 385].)
Here the defendant persistently insisted that the prosecution produce the officer who received the original information and initiated the original broadcast. In the absence of such evidence concerning the original report, the People cannot rely upon the relayed broadcasts as the sole foundation for probable cause to arrest the defendant, and for a search based on such an arrest.

*917 II
(3a) The foregoing does not, however, dispose of the case. The People contend that even if it be assumed that there was no foundation in fact for the original report, as relayed, it should be given the same dignity as an anonymous report from an informer of unknown reliability; that such a report justifies, if it does not compel, an investigation; and that, if the investigation reveals facts giving rise to probable cause to arrest, the accompanying search and seizure of articles found on the suspect's person is legal. The applicable rules were expounded in Cunha v. Superior Court (1970) 2 Cal.3d 352 [85 Cal. Rptr. 160, 466 P.2d 704], as follows: (4) "Circumstances short of probable cause may justify stopping a pedestrian for further investigation (People v. Mickelson, 59 Cal.2d 448, 450 ...), but before an officer detains an individual for questioning by means of physical force or a show of authority, he `must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' (Terry v. Ohio (1968) 392 U.S. 1, 16, 19, fn. 16, 20-21 ...) A pat-down is an additional intrusion, and can be justified only by specification and articulation of facts supporting a reasonable suspicion that the individual detained is armed; a further intrusion into a suspect's clothing to recover a weapon requires a similar showing of a reasonable belief that the pat-down has disclosed the presence of a weapon. (Ibid.; People v. Collins, 1 Cal.3d 658, 662 ...) If as a result of the detention or otherwise the officer becomes aware of circumstances which provide probable cause for arrest, he may arrest the suspect and conduct an incident search for weapons and destructible evidence. (Chimel v. California (1969) 395 U.S. 752, 763 ...; People v. Mickelson, supra, 59 Cal.2d at pp. 450-451 [30 Cal. Rptr. 18, 380 P.2d 658].)" (2 Cal.3d at pp. 355-356. See also, Mann v. Superior Court (1970) 3 Cal.3d 1, 6-7 [88 Cal. Rptr. 380, 472 P.2d 468]; People v. Superior Court [Saari] (1969) 2 Cal. App.3d 197, 201-202 [82 Cal. Rptr. 463]; Williams v. Superior Court (1969) 274 Cal. App.2d 709, 712 [79 Cal. Rptr. 489]; Jackson v. Superior Court (1969) 274 Cal. App.2d 656, 658-661 [79 Cal. Rptr. 502]; Bramlette v. Superior Court (1969) 273 Cal. App.2d 799, 805 [78 Cal. Rptr. 532]; People v. Jackson (1968) 268 Cal. App.2d 306, 309-310 [74 Cal. Rptr. 40]; People v. Lumar (1968) 267 Cal. App.2d 900, 904-905 [73 Cal. Rptr. 682]; People v. Heard (1968) 266 Cal. App.2d 747, 751 [72 Cal. Rptr. 374]; People v. Hawxhurst (1968) 264 Cal. App.2d 398, 401 [70 Cal. Rptr. 253]; People v. Ruiz (1968) 263 Cal. App.2d 216, 220 [69 Cal. Rptr. 473]; People v. Borbon (1956) 146 Cal. App.2d 315, 319 [303 P.2d 560]; People v. Hupp (1943) 61 Cal. App.2d 447, 448 [143 P.2d 84]. Cf. People v. Escollias, supra, *918 264 Cal. App.2d 16, Stephens, J. at pp. 20-21, Kaus, P.J., concurring at p. 21, and Aiso, then J. pro tem., dissenting at pp. 25-29.)
In People v. Lara, supra, the court observed, "... information given by an untested informant or arrestee is nevertheless sufficient if it is `corroborated, in essential respects, by other facts, sources or circumstances.' (People v. Reeves (1964) 61 Cal.2d 268, 274....) Such corroboration need not itself amount to reasonable cause to arrest; its only purpose is to provide the element of `reliability' missing when the police have had no prior experience with the informant. Accordingly, it is enough if it gives the officers reasonable grounds to believe the informant is telling the truth, for in this type of case the issue is `not whether the information obtained by the officers emanated from a reliable source, but whether the officers could reasonably rely upon that information under the circumstances.' (People v. Sandoval (1966) 65 Cal.2d 303, 308-309 ..., citing Willson v. Superior Court (1956) 46 Cal.2d 291, 294-295....)" (67 Cal.2d at pp. 374-375.)
(5) It was not unreasonable for the highway patrol officer to stop the defendant's car for investigation and to take reasonable precautions for his own safety. (See, People v. Mickelson (1963) 59 Cal.2d 448, 454 [30 Cal. Rptr. 18, 380 P.2d 658]; People v. Superior Court [Saari], supra, 2 Cal. App.3d 197, 201; People v. Jackson, supra, 268 Cal. App.2d 306, 310; People v. Lumar, supra, 267 Cal. App.2d 900, 904; People v. Ruiz, supra, 263 Cal. App.2d 216, 220; People v. Hawxhurst, supra, 264 Cal. App.2d 398, 401; People v. Heard, supra, 266 Cal. App.2d 747, 751.)
The fact, if it be a fact, that only a misdemeanor was actually reported to the originating police department should not defeat the right to stop the suspect and investigate. If someone cries out, "Stop thief" an officer is not required to investigate to determine whether the cry in fact came from the victim or a perceptive witness, or whether the alleged offense constituted petty theft, grand theft, burglary or robbery, before stopping the apparent fleeing perpetrator. Extension of the radius of the alarm by the radio network should not detract from the duty of the officer to detain the suspect and investigate.
(6) Moreover, as in the case of an arrest, "[n]o exact formula exists for determining reasonable cause [to detain], and each case must be decided on the facts and circumstances presented to the officers at the time they were required to act. [Citations.]" (See, People v. Ross, supra, 67 Cal.2d at pp. 69-70. See also, People v. Honore, supra, 2 Cal. App.3d 295, 300; and People v. Marquez, supra, 237 Cal. App.2d 627, 633.) In Honore the officers acted on existing relayed information that a felony warrant was outstanding for the suspect, when in fact such a warrant had been *919 recalled and a misdemeanor warrant substituted. In Marquez the outstanding warrant which was reported to the arresting officer had in fact been cancelled. Any mistake which might have been revealed by further testimony would not have affected, ex post facto, the highway patrol officer's right to detain the suspect for investigation at the time he did.
(7) As a result of the search for weapons the officer discovered that the suspect's right hand coat pocket contained a large amount of quarters, nickels and dimes. The abnormal amount of small change corroborated the robbery report. (See, People v. Borbon, supra, 146 Cal. App.2d 315, 318; and cf. People v. Henze (1967) 253 Cal. App.2d 986 [61 Cal. Rptr. 545], particularly at p. 989.) It furnished grounds for the highway patrolman to hold the suspect for delivery to the deputy sheriffs, who, the testimony shows, assumed jurisdiction over violations of the Penal Code and other offenses not related to traffic.
There was then probable cause to arrest the defendant for robbery regardless of the reliability of the original report.
"It is axiomatic that a search of the person incidental to a lawful arrest is valid. [Citations.]" (People v. Ross, supra, 67 Cal.2d 64, 69. See also, People v. Honore, supra, 2 Cal. App.3d 295, 301.) The fact that the search revealed evidence of a second offense does not affect or invalidate the essential reasonableness of the deputy sheriff's conduct in detaining and searching the suspect whom he had reasonable cause to arrest. (See, People v. Jackson, supra, 268 Cal. App.2d 306, 310; and People v. Hawxhurst, supra, 264 Cal. App.2d 398, 403.)
(3b) The People's argument that the arrest, search and seizure can be predicated upon reasonable cause to detain plus corroboration of an untested complaint, founders on the fact, that despite appropriate objection (cf. People v. Escollias, supra, 264 Cal. App.2d 16, 18-19), they failed to establish that any complaint was in fact made.
In People v. Hunt, supra, the court concluded that instructions from one officer to another to stop a suspicious person did not give the second officer reasonable cause to detain and frisk the suspect because "Mere subjective suspicion does not justify detention." (250 Cal. App.2d at pp. 314-315. See also, People v. Collins (1970) 1 Cal.3d 658, 660-661 [83 Cal. Rptr. 179, 463 P.2d 403]; and Irwin v. Superior Court (1969) 1 Cal.3d 423, 427-428 [82 Cal. Rptr. 484, 462 P.2d 12].) In Hunt the court recognized that police officers can properly investigate the complaint of a citizen but found no such complaint (250 Cal. App.2d at p. 315); nor was there any such complaint against the suspect in Irwin. In Collins, the description *920 of the suspect on which the officers purported to act was so nebulous that it was criticized by the court (1 Cal.3d at p. 661).
(8) The contention remains that the report disseminated by the California Highway Patrol at Monterey, and the sheriff's office at Salinas since it was predicated upon an actual message from the highway patrol at San Luis Obispo, should be given at least the weight of an anonymous complaint which would warrant detention for investigation. In the absence of fraud there should be some presumption of regularity in the use of official channels, particularly, as in this case, where there is nothing to suggest an attempt to establish evidence for the offenses with which the defendant was ultimately charged. The fear expressed in Remer and the cited cases (2 Cal.3d at p. 666) is aimed at "the manufacture of reasonable grounds for arrest within a police department by one officer transmitting information purportedly received by him from an informer to another officer who had not received such information from the informer, without establishing under oath that the information had in fact been given to any officer by the informer, or indeed that there was an informer at all. The possibilities of the phantom informer, if this were to be permitted, are too obvious to need elaboration." (People v. Harvey (1958) 156 Cal. App.2d 516, 523 [319 P.2d 689].) The possibilities of using a phantom informer for an unwarranted detention for investigation are perhaps just as great, but there are safeguards, if corroboration is required before an arrest and search may be made. Moreover, the aim of People v. Cahan (1955) 44 Cal.2d 434 [282 P.2d 905], to discourage illegal searches and seizures (44 Cal.2d at p. 448), is not served by a harsher rule of exclusion. As has been noted, officers are duty bound to investigate the vehicle which, or person whom, is the subject of a broadcast relating to criminal activity. The exclusion of the evidence in this case will not relieve the officers of that obligation in other cases in the future. The special concern for privacy implicit in the Fourth Amendment does not override all ostensibly reasonable police action. (See, People v. Hill (1968) 69 Cal.2d 550, 554-555 [72 Cal. Rptr. 641, 446 P.2d 521].)
Despite the foregoing considerations, it is concluded that in the face of defendant's persistent objections it was erroneous to uphold the validity of the arrest without proof of the nature and origin of the report which, when transmitted, resulted in the detention, arrest and search of the defendant. It is not unfair, even if not constitutionally required, to insist that the People, who are in the best position to do so, come forward with the evidence on that issue, once it is properly raised by the defendant.

*921 III
(9) By his petition for writ of prohibition the defendant seeks to restrain the trial court from taking any further proceedings on the pending charges except to dismiss them. Subdivision (i) of section 1538.5 provides, "After the special hearing is held in the superior court, any review thereafter desired by the defendant prior to trial shall be by means of an extraordinary writ of mandate or prohibition filed within 30 days after the denial of his motion at the special hearing." (Italics added.) In response to a similar petition and prayer the court in Greven v. Superior Court (1969) 71 Cal.2d 287 [78 Cal. Rptr. 504, 455 P.2d 432] ruled as follows: "We do not believe that the ultimate relief envisioned by this prayer is contemplated by section 1538.5 (see subd. (j)), and we therefore do not issue a peremptory writ of prohibition granting such relief. However, because it appears on the instant record that defendants' motion to suppress should have been granted, we issue an appropriate peremptory writ of mandate." (71 Cal.2d at p. 295. See also, Abt v. Superior Court (1969) 1 Cal.3d 418, 421-422 [82 Cal. Rptr. 481, 462 P.2d 10]; Stapleton v. Superior Court (1968) 70 Cal.2d 97, 104 [73 Cal. Rptr. 575, 447 P.2d 967]; and Hewitt v. Superior Court (1970) 5 Cal. App.3d 923, 926 [85 Cal. Rptr. 493].)
In this case the rulings of the magistrate and the trial court on defendant's objections made it unnecessary for the prosecution to produce further evidence concerning the origin and nature of the report on which the broadcast was predicated. The following caveat is applicable: "By issuance of this writ, we do not intend to preclude the prosecution from moving under section 1538.5, subdivision (j) ... as is their right under proper circumstances. Likewise, we do not intend by such reference to 1538.5, subdivision (j) to suggest that there is either `additional evidence' or that there exists `good cause ... why such evidence was not presented at the special hearing.' These are matters to be determined by the prosecution, in the first instance, and by the trial court, in the second." (Lockridge v. Superior Court (1969) 275 Cal. App.2d 612, 627 [80 Cal. Rptr. 223]. See also, Stapleton v. Superior Court, supra, 70 Cal.2d 97, 104; and Hewitt v. Superior Court, supra, 5 Cal. App.3d 923, 929.)
Let a peremptory writ of mandate issue directing the respondent superior court to grant petitioner's motion to suppress the evidence seized from the defendant at the time of his arrest on February 10, 1970. The alternative writ of prohibition heretofore issued is discharged.
Molinari, P.J., and Elkington, J., concurred.
NOTES
[1] Penal Code section 836 provides in part: "A peace officer ... may, pursuant to the authority granted him by the provisions of Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, without a warrant, arrest a person: ... 3. Whenever he has reasonable cause to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed."

Section 830.1 designates a deputy sheriff as a peace officer.
It is not contended or suggested herein that the officers in the field did not act properly at the time of the petitioner's arrest. The question in connection with the suppression of evidence is the justification for that arrest in the light of the subsequently disclosed overall information available to the police.
[2] A subsequent inventory revealed 42 quarters, 44 nickels, 30 dimes and a wad of 23 one-dollar bills in the petitioner's coat pocket, and $105 in currency in his wallet.