[Crim. No. 12144.    Second Dist., Div. Five.    Aug. 9, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. GEORGE ALBERT LOPEZ, Defendant and Appellant.

Norman Schwartz, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Phillip G. Samovar, Deputy Attorney General, for Plaintiff and Respondent.

KAUS, P. J.—Defendant appeals from a conviction for a violation of section 11500 of the Health and Safety Code.

### Facts

On May 13, 1965, Officer Brown of the South Gate Police Department saw defendant in a vacant lot at Calden and Southern. He parked his car along the curb behind a vehicle the motor of which was still running. Defendant, who had been looking into some bushes, looked up and started to walk toward Officer Brown. In answer to a question defendant said that he was looking for a certain type of mustard plant which his mother cooks for him. The officer asked defendant for his driver's license. Defendant said he did not have one and that the car at the curb belonged to a friend of his, named Bunny, whose last name he did not know. Bunny was said to be at his girl friend's, from where defendant had driven the car to the location. When asked whether he had ever been arrested defendant said that as a kid he had been arrested for grand theft auto, for using marijuana and for being drunk. Brown then asked defendant whether he had ever used any hard stuff. Defendant said that he had not. He was wearing a short sleeve shirt and Brown noticed that the vein to the left elbow was collapsed. When questioned about the vein, defendant said ''that happened when he was a kid'' and that he had had his last shot of hard stuff four years ago.

Brown then noticed that there were two fresh puncture marks on the vein. When asked again, defendant said that he had had his last shot a week before. Brown said to defendant that it looked to him as if the marks were 24 or 48 hours old. Brown then put in a call for Detective Reed, a narcotics officer. At that point defendant started to run away. Brown caught up with defendant and took him into custody.[1]

During this conversation, defendant had walked to the side of his car and also to its rear.

When Officer Reed arrived at the scene, he noticed that defendant's pupils were pinpointed, his mouth dry, his motions slow and deliberate and his speech slow. He observed the puncture wounds. There was no odor of alcohol. He came to the conclusion that defendant was under the influence of narcotics and formally placed him under arrest.

About 35 minutes later Reed searched the area and under the rear of defendant's automobile discovered a small balloon which eventually proved to contain heroin.

At the time of defendant's formal arrest he was given a warning which in all respects complied with the rule of *People* v. *Dorado*, 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].[2]

At the police station defendant signed a card, never offered in evidence, which supposedly stated that defendant had been so warned, spoke English and understood what he signed. Later, after Reed had found the balloon, he reminded defendant of the advice that he had been given, and told him ''I found your stash.'' He showed him the balloon. Defendant said: ''Okay, man. I scored that over in the front. It is a nickel balloon, and I was in the lot looking for my tools, and the man stopped me. I threw it out there day before yesterday. It is in a brown paperbag near the street sign.''

Appellant testified in his own defense. Essentially he claimed no connection with the heroin. He admitted his confession to Officer Reed, but claimed that it was coerced by threats of a beating. On cross-examination he admitted that he ran when Officer Brown called for a narcotics officer on the radio.

Appointed counsel has done an outstanding job on behalf of

[1] There is no contention made that the later, formal arrest of defendant was illegal. In any event, the record is susceptible of the interpretation that the sole purpose of Officer Brown when he prevented defendant's flight was to make it possible to conduct an investigation of the type permissible under the rule announced in *People* v. *Mickelson*, 59 Cal.2d 448 [30 Cal.Rptr. 18, 380 P.2d 658].

[2] Trial date: August 4, 1965.

his client and we are duly grateful. If we do not discuss his contentions in the manner in which he has raised them, it is because we feel that he misunderstands the meaning of a portion of his client's confession quoted above. The trial court evidently interpreted the statement "I threw it out there day before yesterday. It is in a brown paperbag near the street sign" as referring to defendant's "tools," not to the heroin found underneath the automobile. Although such an interpretation of defendant's statement is perhaps not compelled, it is essentially a reasonable one with which we have no right to quarrel.[3]

Other contentions are discussed under appropriate headings.

### Application of Miranda v. Arizona, 384 U.S. 436.

The point that the warning given to defendant did not comply with *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974] can be disposed of by a reference to *People* v. *Rollins,* 65 Cal.2d 681 [56 Cal.Rptr. 293, 423 P.2d 221].

### Sufficiency of the Evidence. ·

On the assumption that, without such statements, the evidence does not support the conviction, defendant argues that none of the statements made by him to Officer Brown at the scene may be considered because they were only offered to show probable cause for his arrest. A subsidiary point is that these statements should not have been admitted for any purpose since the accusatory stage was reached as soon as the officer had learned that defendant did not have a driver's license, at which point he should have advised him of his constitutional rights.

As will be seen from the next section of this opinion, defendant's statements at the scene were not necessary to support the conviction. These statements were, indeed, offered only to show probable cause for the arrst and there is nothing in the record to support a conclusion that the trial court considered them for any other purpose.

As far as any violation of defendant's rights as declared in *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361] is concerned, it is a sufficient answer that no objection on that score was voiced below. (*People* v. *Crooks,* 250 Cal.App.2d. 788 [59 Cal.Rptr. 39].) The case was tried

---

[3]The confusion possibly arises from the use of the singular "it" to refer to the plural "tools."

on the transcript of the preliminary hearing and additional testimony. After the stipulation concerning the transcript of the preliminary hearing, the People offered the balloon of heroin in evidence. Defense counsel then renewed an objection to its admissibility which had been made at the preliminary hearing[4] and was overruled. The People then rested. Defense counsel then made a motion "to acquit." The exact grounds on which that motion was made are somewhat difficult to follow. We gather that the basic complaint was that there had been an illegal arrest. In the course of his argument counsel twice, but in a very offhand manner, adverted to the fact that defendant was not advised of his constitutional rights at the scene. At no time, however, was there any objection to any particular statement made by defendant or any motion to strike any such statement. Had there been, the trial court would have been in a position to rule intelligently, based upon the exact situation that prevailed at the time defendant made a particular statement.

In any event, as our later discussion will show, the defendant's statements were hardly necessary to justify a temporary detention for the purpose of investigation (*People* v. *Mickelson,* 59 Cal.2d 448, 450-452 [30 Cal.Rptr. 18, 380 P.2d 658]) and the later arrest which followed defendant's flight and Officer Reed's observation that defendant was under the influence of a narcotic. Further more—as was pointed out by the trial court—the arrest produced no evidence against defendant (*People* v. *Valenti,* 49 Cal.2d 199, 203 [316 P.2d 633]), it merely made him immediately available when later on the balloon was found. We know of no rule which would force the police, under such circumstances, to free a suspect and give him a head start before rearresting him.

### Corpus Delicti

It is argued that the corpus delicti of the offense was not proved.

It will be recalled that while talking to Officer Brown, defendant had walked to the side and to the rear of his car. Officer Reed testified as follows concerning his discovery of the balloon: "I went back to the location and found in the rear of the car a small balloon. Officer Leatherman is the one that found it, directed it to my attention, and I picked it up, under the rear of the car. . . . It was just to the—it was to

---

[4] "Objected to on the ground that it is a violation of the due process of law and also under Section 196 [*sic*] of the State Constitution. . . ."

the rear of the car, approximately six inches under the car, six inches to a foot. It was necessary that you stand back probably four or five feet in order to see the balloon.'' We think the evidence was adequate not only to show that the balloon had not been abandoned—all that is necessary to prove the corpus delicti—but also that the possessor was defendant who disposed of it during his conversation with Officer Brown.

The permissible inference that defendant tried to hide the balloon under the car also disposes of the contention that there is no evidence that defendant had knowledge of the narcotic character of the substance disposed of.

### Overbearing Police Conduct

After reading the record in this matter, before oral argument, we were somewhat troubled by the question whether or not Officer Brown's initial contact with the defendant somehow constituted the assertion of an authority which he did not in fact have and that defendant's evident attempt to dispose of the heroin by hiding the balloon under his automobile was only a response thereto. (*Badillo* v. *Superior Court*, 46 Cal.2d 269, 273 [294 P.2d 23]; *Gascon* v. *Superior Court*, 169 Cal.App.2d 356, 358-359 [337 P.2d 201].) In trial counsel's rather rambling motion ''to acquit'' there was some reference to that problem. We therefore, by letter, requested counsel to argue the point orally, which was done.

After examining the matter further, we are satisfied that our concern was misplaced. Since no objection on that point was made at the preliminary hearing, the matter was not explored in depth at that time. The following, however, are legitimate inferences from the record: when Officer Brown saw the unattended vehicle with its motor running, it was evident that somebody had violated section 22515 of the Vehicle Code.[5] Without the officer's asking any questions at all, defendant walked toward him. The officer then asked him what he was doing, an inquiry clearly permissible by the rule announced in such cases as *People* v. *Martin*, 45 Cal.2d 755 [290 P.2d 855] and *People* v. *Michael*, 45 Cal.2d 751 [290 P.2d 852].[6] The next thing that was said was a request for

---

[5]Section 22515 reads as follows: ''*Unattended vehicles.* No person driving, or in control of, or in charge of, a motor vehicle shall permit it to stand on any highway unattended without first effectively setting the brakes thereon and stopping the motor thereof.''

[6]''Thus, it is not unreasonable for officers to seek interviews with suspects or witnesses or to call upon them at their homes for such purposes.'' (*People* v. *Michael, supra,* p. 754.)

defendant's driver's license. This was perfectly reasonable if the officer was going to give him a ticket as directed by section 40500 of the Vehicle Code. It then appeared that defendant did not have a license.

Surely nothing happened up to that point which could be described as overbearing police conduct.

■ Whether or not Officer Brown should have advised defendant of his rights to silence and counsel at that moment or later on is beside the point. His earlier and later observation—the collapsed vein, the apparently fresh puncture wounds—surely entitled him to detain defendant pending further investigation. What evidently caused Lopez to get rid of the balloon was not the failure to exchange constitutional amenities but the permissible detention which, he feared, would soon ripen into an arrest.

The judgment is affirmed.

Hufstedler, J., and Stephens, J., concurred.

A petition for a rehearing was denied August 25, 1967.