[Crim. No. 4288. Fourth Dist., Div. One. Mar. 31, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
JONATHON POEHNER, Defendant and Appellant.

482

### COUNSEL

Leif Tessem, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Russell Iungerich, Deputy Attorney General, for Plaintiff and Respondent.

### OPINION

**COUGHLIN, Acting P. J.**—Defendant appeals his conviction of the offense of transportation of restricted dangerous drugs, contending (1) the court erred in denying his motion to suppress, and (2) the evidence is insufficient to support his conviction.

On January 13, 1970, shortly after 11 p.m., a United States border inspector at the Tecate border station, by radio, advised border patrolman Rowe, acting as a lookout on a hill nearby, a blue Volkswagen, giving its license plate number, was passing through the station; the occupants had come from Tijuana and lived in the San Diego area; and he felt it was likely they would make a pickup of narcotics after leaving the station because there was no reason why they should take a 70-mile trip out of their way.

A patrolman on the hill was able to see the inspector talking to occupants of cars as they passed through the port of entry and to observe the cars thereafter as they traveled northerly along Tecate Road, which is the main route from the border station to Highway 94, an east-west artery. The area in question has a history of trafficking in narcotics. One of the most

widely used procedures to smuggle narcotics across the border, brought there by automobile, is to have a person carry the narcotics across the border; hide them along Tecate Road; return to the automobile; drive it across the border; and then pick up the hidden narcotics.

Border Patrolmen Feely and Summers, while on patrol duty in the area, overheard the radio message to Rowe, shortly thereafter, by radio, received a message from Rowe asking if they had heard the message from the inspector, also advising he had the suspect vehicle in sight and was watching it; and a minute or so later received another message from Rowe stating the Volkswagen had turned onto a side road, went about 50 yards, stopped, and its lights were turned off.

In a later communication with Rowe, the patrolmen learned he had lost sight of the Volkswagen after its lights were turned off; the fog closed in; and he did not see it again.

About five minutes after the second message from Rowe, the patrolmen observed the headlights of a vehicle approach and enter upon Highway 94 from Tecate Road; followed it in their car; saw it was a blue Volkswagen with the same license number reported by the border inspector; and activated their red light and siren. The Volkswagen, which was traveling 40 miles per hour, passed a wide place in the road where it could have stopped about 600 feet from the point where the red light and siren had been activated; and proceeded to the next wide place in the road, about 3,300 feet further on, where it stopped. While the Volkswagen was coming to a stop a tan colored package was thrown from the right window or right door; landed on the pavement; and came to rest in a bush alongside the road. The package looked like a rolled-up paper sack; was 8 inches long and 3½ inches in diameter; and consisted of three paper sacks, one within another. The innermost sack contained 987 Seconal capsules. Defendant, Poehner, and another man, named Aranda, were in the Volkswagen; were interrogated by the patrolmen; were arrested; and, thereafter, were charged, among other things, with transportation of restricted dangerous drugs.

At the preliminary hearing Feely and Summers, the patrolmen, were the only witnesses. The foregoing statement of facts is premised on their testimony. The defendant objected to questions eliciting the radio communication by the inspector to Rowe and the communications from Rowe to the patrolmen. The objection was overruled and testimony relating the communications was admitted on the issue of probable cause alone.

Defendant's written motion to suppress was directed to "all items found in or around the vehicle he [defendant] was in on January 13, 1970, on the grounds that these items were obtained as the result of an unlawful deten-

tion and search and seizure." The hearing on the motion was submitted upon the transcript of the preliminary hearing. No oral testimony was presented. The motion was denied.

█ Initially we direct attention to the fact the question presented by the motion to suppress is not whether the seizure of the package containing Seconal capsules was the product of a search but whether it was the product of illegal police activity in undertaking an investigation without probable cause. The package was thrown from the Volkswagen and was in plain sight when retrieved by the patrolmen. There was no search. (*People* v. *Harris*, 15 Cal.App.3d 498, 501 [93 Cal.Rptr. 285].) If the patrolmen were authorized to stop the Volkswagen as an investigative procedure, evidence obtained in the process thereof was not obtained illegally.

█ The distance between the Tecate border station and the intersection of Tecate Road by Highway 94 is about two miles. The information possessed by the patrolmen when they first saw the Volkswagen furnished probable cause to stop it and interrogate the occupants as an investigative procedure preliminary to a determination whether there was probable cause to believe they might be smuggling narcotics into the United States from Mexico in the manner heretofore described, i.e., first carrying them across the border in person and then picking them up by automobile. The action of the patrolmen, premised on information then possessed, was not illegal.

█ Defendant contends it was error to deny his motion to suppress because the information received by Feely and Summers from the inspector and Rowe, which the People assert furnished probable cause to investigate, was not verified by the latter at the hearing on the motion. Cited in support of this contention are the decisions in *People* v. *Madden,* 2 Cal.3d 1017, 1020 [88 Cal.Rptr. 171, 471 P.2d 971], *Ojeda* v. *Superior Court,* 12 Cal.App.3d 909 [91 Cal.Rptr. 145], *People* v. *Escollias,* 264 Cal.App.2d 16, 19 [70 Cal.Rptr. 65], and *People* v. *Harvey,* 156 Cal.App.2d 516, 522-524 [319 P.2d 689]. (See also *Remers* v. *Superior Court,* 2 Cal.3d 659, 667 [87 Cal.Rptr. 202, 470 P.2d 11].) █ The general rule stated in these cases prescribes the evidentiary showing required to justify a search incident to an arrest premised on probable cause based on information received through official channels, and provides "when an officer furnishes to another officer information which leads to an arrest, the People must show the basis for the former officer's information." (*Remers* v. *Superior Court, supra,* 2 Cal.3d 659, 667.) In most cases where the rule has been applied the information furnished the arresting officer has been the product of hearsay evidence and consisted either of (1) a statement by the informing officer asserting as a fact the defendant had committed a particular crime or was at a particular place where subsequently he was arrested, without

stating the basis for the assertion (*People* v. *Madden, supra,* 2 Cal.3d 1017, 1020-1021; *Remers* v. *Superior Court, supra,* 2 Cal.3d 659, 666-667; *Ojeda* v. *Superior Court, supra,* 12 Cal.App.3d 909, 913-915, 919-920; *People* v. *Adkins,* 273 Cal.App.2d 196, 197-199 [78 Cal.Rptr. 397]; *People* v. *Rice,* 253 Cal.App.2d 789, 792 [61 Cal.Rptr. 394]; *People* v. *Pease,* 242 Cal.App.2d 442, 448 [51 Cal.Rptr. 448]; cf. *People* v. *Cox,* 263 Cal.App.2d 176, 185 [69 Cal.Rptr. 410]); (2) a statement by the informing officer a lay informer had told him the defendant was guilty of a crime or relating information given by the informer, without identifying the informer, which has been described as information given by a "phantom informer" (*People* v. *Harvey, supra,* 156 Cal.App.2d 516, 521-523; see *People* v. *Escollias, supra,* 264 Cal.App.2d 16, 17-19); or (3) a request, through official channels, to arrest the defendant for a particular crime for which no warrant has been issued. (*People* v. *Lara,* 67 Cal.2d 365, 373-375 [62 Cal.Rptr. 586, 432 P.2d 202].)

In *Remers* v. *Superior Court, supra,* 2 Cal.3d 659, 666-667, the court states the rule and the reason therefor in this language: "It is well settled that while it may be perfectly reasonable for officers in the field to make arrests on the basis of information furnished to them by other officers, 'when it comes to justifying the total police activity in a court, the People must prove that the source of the information is something other than the imagination of an officer who does not become a witness.' [Citations.] To hold otherwise would permit the manufacture of reasonable grounds for arrest within a police department by one officer transmitting information purportedly known by him to another officer who did not know such information, without establishing under oath how the information had in fact been obtained by the former officer. [Citations.] 'If this were so, every utterance of a police officer would instantly and automatically acquire the dignity of official information; "reasonable cause" or "reasonable grounds," . . . could be conveniently fashioned out of a two-step communication; and all Fourth Amendment safeguards would dissolve as a consequence.' "

The reasons for the rule do not apply where the information furnished the arresting officer by another officer relates " 'specific and articulable facts' " observed by the latter (*Remers* v. *Superior Court, supra,* 2 Cal.3d 659, 667; *People* v. *Hamilton,* 71 Cal.2d 176, 179 [77 Cal.Rptr. 785, 454 P.2d 681]), is not hearsay based on hearsay, and is not a conclusionary statement based on unknown sources. Such a situation does not involve the "phantom informer." In *People* v. *Pease, supra,* 242 Cal.App.2d 442, 448, 450, which is one of the decisions cited as authority for the general rule stated in *Remers* v. *Superior Court, supra,* 2 Cal.3d 659, 666, the court, in holding the rule applied to the situation at hand, specifically noted the officers transmitting the information furnishing probable cause to arrest had

not obtained such "by their personal observations" and stated "the mere fact that information acquired by an arresting officer comes from a fellow officer as a hearsay statement *not based on the latter's personal observations* does not justify the conclusion that reliance thereon is reasonable in the absence of evidence showing that the informant originally transmitting the information to the police was reliable or that such information had its source in official police files or records." (Italics ours.)

A showing of probable cause in an affidavit used as a basis for issuance of a search warrant may be premised on information furnished the affiant by an informer, whether a layman or a policeman, where the informer's statement is set forth "in language that is factual rather than conclusionary," it is established he "spoke with personal knowledge of the matters contained in such statement," and there is a showing of "some underlying factual information" from which it reasonably can be concluded the informer was credible "or his information reliable." (*People* v. *Hamilton, supra,* 71 Cal.2d 176, 179-180.) ■ Where, on a motion to suppress evidence, the showing of probable cause premised on information furnished an arresting officer by another officer comports with the showing required by an affidavit to obtain a search warrant under similar circumstances, it would be unreasonable to require a further showing through the production and examination of the informing officer. In each instance the existence of probable cause is determined in a judicial proceeding. The rules of law governing the sufficiency of the showing should be the same in both proceedings. ■ In the case at bench, the evidence at the hearing on the motion to suppress shows the information received by one officer from another officer as proof of probable cause was "factual rather than conclusionary," related "specific and articulable facts," was the product of personal observations by the informing officer, and was reliable. The latter factors, i.e., the source of the information and its reliability are shown by direct and circumstantial evidence.

The information furnished Feely and Summers by the inspector and Rowe, with one exception, detailed things they saw and heard. The exception is the statement by the inspector respecting his belief which is immaterial, should be disregarded and may not be relied upon as furnishing probable cause. (*Irwin* v. *Superior Court,* 1 Cal.3d 423, 427 [82 Cal.Rptr. 484, 462 P.2d 12]; *People* v. *Hunt,* 250 Cal.App.2d 311, 314 [58 Cal.Rptr. 385].) However, as heretofore noted, the showing of probable cause to investigate is premised upon the factual information furnished the patrolmen by the inspector and Rowe and upon other information which was the product of their personal knowledge, rather than upon any belief of the inspector.

■ The evidence supports a finding the information received by the

patrolmen was reliable. It was furnished in the discharge of official duty, in the manner ordinarily employed, contemporaneous with the observations made and the happening of the incidents reported. The statement a blue Volkswagen with a specified license number was crossing the border was corroborated by the fact Feely and Summers in due time saw such a Volkswagen traveling north on Tecate Road. The "specificity" of the statements by Rowe and his acknowledgment he lost sight of the Volkswagen after the fog closed in belie any purpose to manufacture a story. (Gen. see *People* v. *Madden, supra,* 2 Cal.3d 1017, 1021; *People* v. *Johnson,* 68 Cal.2d 629, 633 [68 Cal.Rptr. 441, 440 P.2d 921].)

A valid arrest for probable cause may be made, on the basis of information received through official channels even though the information received is incorrect. (*People* v. *Honore,* 2 Cal.App.3d 295, 299 [82 Cal.Rptr. 639]; *People* v. *Marquez,* 237 Cal.App.2d 627, 633 [47 Cal.Rptr. 166].) The rule requiring the People to show the basis of the information furnished through official channels, relied upon as proof of probable cause, is not intended to require the production and examination of the informing officer to determine whether factual information he observed and transmitted is correct. The real issue in the premises is whether reliance on the information received is reasonable, not whether the facts related in the information are correct. (*People* v. *Pease, supra,* 242 Cal.App.2d 442, 446.) The sufficiency of the showing on this issue is dependent upon the sufficiency of the evidence to justify the conclusion reliance on such information was reasonable, and not upon the sufficiency of the evidence to justify the conclusion the transmitting officer's observations were correct.

We conclude the showing by the People on the motion to suppress supports the order of denial.

At the time of trial, by stipulation, the case was submitted "upon the transcript of the testimony taken at the preliminary hearing" with the additional stipulation if Feely and Summers were called as witnesses they would testify defendant was the driver of the Volkswagen and Aranda was the passenger.

Defendant's contention the evidence does not support his conviction is premised upon a claimed lack of any showing he had knowledge of the presence of the package of Seconal capsules in the Volkswagen. The elements of the offense of transporting the restricted dangerous drug, including knowledge of its presence, may be established by circumstantial evidence. (*People* v. *White,* 71 Cal.2d 80, 83 [75 Cal.Rptr. 208, 450 P.2d 600]; *People* v. *Groom,* 60 Cal.2d 694, 696 [36 Cal.Rptr. 327, 388 P.2d 359].) Defendant contends the evidence at bench shows only a package con-

taining Seconal capsules was thrown from a vehicle occupied by two persons, and this is not sufficient to support a finding he had any control over them or knowledge of their presence, citing in support of his position the decisions in *People* v. *Crandall,* 275 Cal.App.2d 609 [80 Cal.Rptr. 81], *People* v. *Boddie,* 274 Cal.App.2d 408 [80 Cal.Rptr. 83] and *People* v. *Foster,* 115 Cal.App.2d 866 [253 P.2d 50]. The facts in the cited cases and those in the case at bench differ in two material respects, i.e., (1) the control of the defendant over the operation of the vehicle and (2) the size of the package containing the contraband. (See *People* v. *Solo,* 8 Cal. App.3d 201, 207 [86 Cal.Rptr. 829].) Defendant was the driver of the Volkswagen; could have stopped at a wide place in the road 600 feet distant from the place where the patrolmen activated the red light and siren on their car; but, instead of stopping, continued ahead in excess of one-half mile before coming to a stop at the second available wide place in the road. It is reasonable to infer the reason defendant did not stop when given the signal to do so was because both he and his passenger were concerned about the presence of the contraband in the vehicle, and during the time expiring while traveling between the first and second stopping places decided to discard the contraband. Defendant's conduct as driver of the Volkswagen was evidence of a consciousness of guilt. The amount of contraband and the size of the package in which it was being carried also are incriminating circumstances supporting the conclusion defendant had knowledge of its presence and character. It is reasonable to infer a package containing 987 Seconal tablets wrapped in three paper bags, which was 8 inches long and 3½ inches in diameter was not carried in the pocket of the passenger, was visible while carried in the vehicle and a subject of concern to the driver. We conclude the evidence supports the conviction. (Gen. see *People* v. *White, supra,* 71 Cal.2d 80, 82-83; *People* v. *Groom,* 60 Cal.2d 694, 696 [36 Cal.Rptr. 327, 388 P.2d 359]; *People* v. *Solo, supra,* 8 Cal.App.3d 201, 207; *People* v. *Lopez,* 253 Cal.App.2d 377, 381, 382 [61 Cal.Rptr. 605].)

The judgment is affirmed.

Whelan, J., and Ault, J., concurred.