Filed 10/4/21  P. v. Mayes CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>EDWARD MAYES,<br><br>    Defendant and Respondent. | A160820<br><br>(Solano County<br>Super. Ct. No.<br>FCR343342) |

After granting defendant Edward Mayes' motion to suppress, the trial court dismissed the criminal complaint against him.  (Pen. Code, § 1538.5.)[1] On appeal, the People maintain the court erred in sustaining a *Harvey-Madden*[2] objection and further erred in dismissing the complaint as to the misdemeanor child endangerment count.  We agree and order the complaint reinstated as to the firearm and child endangerment counts.

### BACKGROUND

Defendant was charged by complaint with one count of felony concealment of a firearm in a vehicle (§ 25400, subd. (a)(1)), one count of felony carrying of an unregistered firearm (§ 25850, subd. (a)), and one count

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

[2]  *People v. Harvey* (1958) 156 Cal.App.2d 516 (*Harvey*); *People v. Madden* (1970) 2 Cal.3d 1017 (*Madden*).

1

of misdemeanor child endangerment (§ 273a, subd. (a)) based on events that occurred in January 2019, and one count of misdemeanor brandishing a concealable firearm in public (§ 417, subd. (a)(2)(A)) based on events that occurred in December 2018.

Pursuant to section 1538.5, defendant moved to suppress all evidence obtained during the search of his vehicle in connection with the January 2019 incident. In a footnote in his memorandum of points and authorities supporting his motion, defendant notified the district attorney that he intended to "raise a *Harvey*[-]*Madden* objection on the hearing of this motion."

The People opposed the motion, variously asserting defendant's detention was lawful because it was "based upon a reasonable suspicion of criminal activity," defendant's arrest for child endangerment was lawful "[g]iven the extremely reckless and dangerous driving of the defendant," and the subsequent search was lawful as a search incident to defendant's arrest under *Arizona v. Gant* (2009) 556 U.S. 332.

Neither party mentioned *Harvey-Madden* in their supplemental briefs.

At the combined suppression and preliminary hearing, the trial court heard from Vacaville Police Officers Kenny Meek and Dustin Willis.

In December 2018, a woman called the police department to report "some type of road rage incident," and she was instructed to drive to the department parking lot. There, she met with Officer Meek. The woman told Meek she had been approaching a stop sign, when a vehicle started to pull out in front of her. She "utilized her horn and slammed on her brakes." The man in the vehicle ahead of her exited his car, walked toward her passenger side, exhibited a gun, and "pulled the slide back as if they were chambering a round." The victim described the man as "a medium stocky built Hispanic

2

male with a ponytail" and stated there was a "[h]eavier-set white female" in "her mid-20s . . . with brown hair" in the vehicle as well. The victim went on to state that when she noticed the man with his gun, "[s]he left the scene." As she was leaving, the man got back into his car and "began to follow her." After making a turn, "the other vehicle began to pass her, and . . . she utilized her cell phone to record the vehicle." She tried to follow him for "a few moments" but lost "the vehicle after it ran a red light." She then telephoned the police and reported the incident.

When Officer Meek began to testify about the victim's cell phone video, defense counsel objected on the grounds of "Multiple hearsay. Foundation. *Harvey-Madden*." The court asked if the prosecution was "asking about the words in the video." When the prosecution responded no, the court replied, "I think the testimony was that he watched the video . . . that she took earlier of the individual who passed her after incident, so overruled." Defense counsel never developed the objection further.

Officer Meek then testified that he viewed the cell phone video and observed a "dark-colored sedan." Using the "particular time and date associated" with the cell phone video Officer Meek retrieved footage from a "pole-mounted camera system" in the area to give him a "general time frame and area to review video." He observed a "dark-colored four-door sedan" in the area "consistent with the sedan" he had seen on the woman's cell phone video. He had previously used the pole-mounted camera systems to retrieve videos and found the "time and date for the[] videos . . . to be accurate." From the pole-mounted camera footage, Officer Meek was able to pause the video and obtain the license plate of the vehicle. He then ran a records check, retrieved the registered owner's name, and pulled up the owner's picture. Officer Meek identified defendant as the registered owner from the retrieved

photo. He attempted to contact the victim but "she did not follow through after . . . several attempts." Officer Meek then sent out an officer "briefing," consisting of a description of the suspect, a "description of [the] vehicle, including [the] license plate and information that [the] subject possibly had a firearm."

After Officer Meek's testimony, defense counsel moved to strike. The trial court asked, "As to the prelim? As to the 1538?" Defense counsel responded that he would like "to reserve my argument until the end. [¶] But if this is—the way the police report is written by Detective Willis, he makes an oblique reference to his, but his—according to his police report, bases for going after my client is based on his driving and child endangerment. So I don't understand why the brandishing is relevant." After clarifying with Officer Meek that the victim "wished to identify" defendant but never showed up to make the identification, counsel stated, "So my guess is that this was one of the reasons why Willis paid attention to my client when he saw him."

In January 2019, almost three weeks after receiving the briefing, Officer Willis was on patrol and saw defendant exit his residence and walk toward his vehicle that was "previously described" in the briefing. When Officer Willis received the e-mail "briefing" in December, he had "recognized the name of the registered owner" because he had "previously contacted the registered owner in that vehicle on a traffic stop."

Defendant "appeared to see" Officer Willis' marked patrol car, and he "turned around and went back inside" his residence. Officer Willis drove a block away and parked. From there, he observed defendant driving past him and noted defendant's vehicle had "tinted windows on all the side windows and the rear window," in violation of the vehicle code. Officer Willis made a U-turn, and defendant sped away and "appeared to be traveling at a very

4

high rate of speed" through a residential neighborhood. Officer Willis accelerated and followed the car in an attempt to catch up to it. Officer Willis "was going at least 60 miles an hour, and . . . wasn't catching up to the defendant."

At one point, defendant, who was headed south down a road, "entered the northbound lane completely" to pass a bus. Officer Willis then activated his "emergency lighting equipment and siren," continued to pursue defendant, and advised responding officers that defendant "was probably going home."

Eventually, defendant "rapidly" slowed down and, having made a giant circle, parked in his own driveway. Officer Willis parked behind defendant. He noticed defendant "making furtive movements with his—basically leaning forward. His butt came off the seat first, as if someone was lifting himself up in the driver's seat, and then [he] saw the front half of [defendant's] body and his arms dip towards basically the floorboard of the vehicle." This led Officer Willis to believe, based on his experience, that defendant "was either concealing something or arming himself with something."

Officer Willis exited his patrol car, drew his firearm, and ordered defendant to place his hands on the roof of his vehicle. Defendant rolled down the driver-side window and placed his hands "outside of the car." Once backup arrived, officers ordered the occupants out of the vehicle one by one. Defendant's girlfriend was in the front passenger seat, and his three-year-old son was in the rear passenger seat behind the driver. Officer Willis described defendant's girlfriend as a "white female adult; larger, very heavy set." Officer Willis arrested defendant because he had "probable cause" to do so for child endangerment and reckless driving based on his "observed dangerous driving behavior." He then performed a search of the vehicle based on

5

"several reasons"—the information in Officer Meek's briefing regarding the brandishing of a firearm (which included specific information such as defendant's license plate number, his photograph, and his description provided by the victim), as well as Officer Willis' own observation of "evasive maneuvers to get away from the police" and "furtive movements consistent with someone who would be either concealing or retrieving a handgun from under the seat."[3] A search of the vehicle revealed a "loaded Glock .45 caliber handgun."

On cross-examination, Officer Willis stated he "made several attempts" to contact defendant prior to the January 2019 events. "[W]henever I thought about it on patrol, I'd drive down that street just to see if the car was there" but he never knocked on defendant's door. Officer Willis also stated that as far as he knew, there was never any probable cause to arrest defendant for the brandishing offense.

The victim did not testify and neither the victim's cell phone video, the pole-mounted camera footage, nor Officer Willis' bodycam cam video were entered into evidence, although the latter video was played for the court. Only Officer Willis' "dash cam video" was entered into evidence.

The court then heard from counsel. The People asserted there was "reasonable suspicion to detain" defendant "based on multiple Vehicle Code violations"—the tinted windows and "the driving that Officer Willis" to which testified to. "There was probable cause" for defendant's arrest "as testified to by Officer Willis for child endangerment based on his, the defendant's, erratic driving." And finally, Officer Willis had probable cause to search the vehicle

---

[3] Officer Willis also gave a fourth reason—that the "vehicle had to be inventoried per our department policy prior to its impound." However, the car was never impounded. Instead, the officers chose to leave the car at defendant's home, where it was legally parked in his driveway.

6

because defendant matched the description in the briefing sent out by Officer Meek, and further Officer Willis himself testified about defendant's "evasive driving" and later his "furtive movements . . . leading him to believe that there is a weapon or some other contraband" in the vehicle.

At this point, the court stated, "Under [*Gant*], it seems like an officer's ability to search the vehicle where someone has been detained in handcuffs away from the vehicle is now more limited than it used to be." The court went on to state, "I think there was a [*Harvey-Madden*] objection made during the hearing. . . . [¶] I don't necessarily disagree with you that having all those facts in front of Officer Willis, there might have been probable cause to search that vehicle. However, I think under the [*Harvey-Madden*] line of cases, there is some burden on the People to present evidence confirming what the source of that information was. [¶] You had one officer testify to taking the statement from a female. No one was ever able to talk to or contact that female again, and Officer Willis received that information in briefing, but the [*Harvey-Madden*] line of cases stands for the one proposition which is that if it could be alleged that some kind of a probable cause was somehow fabricated by law enforcement, that the source of whatever it was that is potentially fabricated has to be presented and that can be a dispatch call from the individual. That could be that individual testifying. That could be other confirming information that comes out in the record to support whatever it was, the basis of the probable cause is based on."

The prosecutor responded, "I didn't specifically cite case law in the People's supplemental briefing with concern to the [*Harvey-Madden*]. That didn't seem like the issue the defense was focused on here, but there is case law where if an officer gains the source of information from a civilian, that is sufficient . . . , so I can bring up that case law if your Honor allows me a brief

7

recess if that is of great concern here." The prosecutor went on to state, "I think with Officer Meek actually contacting the victim in this case and obtaining that information, and, also, the fact that he reviews not only cellphone video from the victim but also goes on the city cameras and verifies the information that the witness is providing to him with concern to the vehicle and license plate, that there is corroboration as to what the victim is telling Officer Meek at that point." However, the prosecutor acknowledged the cellphone video was not in evidence. The court confirmed, however, that that was "something that [Officer Meek] says he looked at." The prosecutor ended by stating, based on all the facts, Officer Willis "had reasonable cause to believe that the defendant's vehicle contained a firearm."

In response, defense counsel maintained that whatever Officer Meek "did on [his] own to try to independently corroborate, that was not brought into evidence." Further, defendant was never identified by the victim, and the "video doesn't show [defendant] as the driver." Defense counsel asserted the prosecution was "trying to bootstrap," by stating, " 'Oh, yeah there is this probable cause to arrest based on this brandishing,' " but the brandishing offense was never confirmed. Defense counsel also argued the brandishing offense happened weeks earlier, and "once you put him in the back of the police car, then you get into whether or not the search was okay when he is handcuffed under [*Gant*]." Officer Willis never testified that he saw a gun, rather he stated defendant " 'was just moving around.' " Finally, the officers did not search the car "under an automobile exception or a towing exception," because the car was legally parked and they did not get a warrant.

The trial court granted the motion to suppress the firearm, stating Officer Willis could have, but had not, applied for a search warrant for the vehicle. It then ruled that under *Harvey-Madden*, "the People are required to

8

bring some kind of evidence that what the first officer testified to wasn't something that was merely . . . the products of his imagination. In other words, he didn't make this up. That could be the 911 call made . . . that could have been confirmed by the cellphone video of this victim of the alleged brandishing . . . something that would have confirmed this. That something wasn't presented in this hearing. . . . [¶] That being the case, I think for purpose of the 1538, a lot of Officer Willis' assertions are simply not in evidence because of the [*Harvey-Madden*] line of cases and without that, there wasn't sufficient justification for his search. [¶] So I'm going to grant the 1538 motion as to this firearm."

Having excluded the evidence of the firearm, the court ruled there did not "appear to be a sufficient basis to hold him to answer" for either of the January 2019 felony firearm counts or the December 2018 misdemeanor brandishing count.[4] The court additionally dismissed the child endangerment count for lack of sufficient evidence.

DISCUSSION

***Motion to Suppress***

The People maintain they "refuted . . . defendant's *Harvey/Madden* objection," given that "Officer Meek was the first officer to receive information from the victim regarding the road rage incident and given that Officer Meek subsequently developed the defendant as a suspect in the incident based upon further investigation."

"In reviewing a trial court's ruling on a motion to suppress evidence, we defer to that court's factual findings, express or implied, if they are supported

---

[4] The court also dismissed the misdemeanor brandishing count because of the lack of identification evidence, and the People do not challenge that ruling on appeal.

by substantial evidence. [Citation.] We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment." (*People v. Lenart* (2004) 32 Cal.4th 1107; 1119; *People v. Nishi* (2012) 207 Cal.App.4th 954, 960.)

The *Harvey-Madden* rule stands for the proposition that while police officers may rely on information provided to them by other officers in making arrests, " 'the People must prove that the source of the information is something other than the imagination of an officer who does not become a witness.' [Citations.] To hold otherwise would permit the manufacture of reasonable grounds for arrest within a police department by one officer transmitting information purportedly known by him to another officer who did not know such information, without establishing under oath how the information had in fact been obtained by the former officer." (*Remers v. Superior Court* (1970) 2 Cal.3d 659, 666-667.) In sum, the prosecution must show that the officer furnishing the information generating the arrest had probable cause to believe the arrest was justified. (*People v. Johnson* (1987) 189 Cal.App.3d 1315, 1320.)

"Probable cause for a search or arrest without a warrant may be proven by information passed from one officer to another if it is shown the information was ' " 'factual rather than conclusionary,' related 'specific and articulable facts,' was the product of personal observations by the informing officer and was reliable." [Citations.]' (*People v. Ramirez* [(1997)] 59 Cal.App.4th [1548,] 1554.) Ultimately, the issue boils down to whether the latter officer's reliance on the information was reasonable." (*People v. Gomez* (2004) 117 Cal.App.4th 531, 540.)[5]

---

[5] We note the parties are not contesting defendant's arrest but only the subsequent search. Officer Willis testified he arrested defendant not because

10

The *Harvey-Madden* rule has been satisfied. " '[W]hile it may be perfectly reasonable for officers in the field to make arrests on the basis of information furnished to them by other officers, "when it comes to justifying the total police activity in a court, the People must prove that the source of the information is something other than the imagination of *an officer who does not become a witness*." ' " (*Madden*, *supra*, 2 Cal.3d at p. 1021, italics added.) Here, Officer Meek testified as to how he established the basis for the information furnished in his briefing.

Defendant acknowledges Officer Meek—the officer who originally furnished the information—testified as to the basis for that information. However, he maintains the "*Harvey-Madden* rule is not ipso facto satisfied when the transmitting officer testifies at a suppression hearing," and that here, "there was insufficient foundation and corroboration for much of" how Meek developed defendant as a suspect because the "prosecution did not introduce proof of each link of the chain" of communication. He points out the prosecution could have introduced evidence of the victim's 911 call, the dispatch received by Officer Meek, the computer-assisted-dispatch printout, the body camera recording of Officer Meek's interaction with the victim, the victim's cell phone video, and the city camera, and could have called the victim as a witness—but it did none of these things.

Defendant's reliance on *In re Eskiel S.* (1993) 15 Cal.App.4th 1638 (*Eskiel S.*) is misplaced. In that case, the arresting officer testified that he "heard a radio broadcast which reported a possible gang fight involving 10 to 12 Black persons including 1 possibly armed." (*Id*. at p. 1641.) After proceeding to the location identified in the broadcast, the officer "saw several

---

of information supplied by Officer Meek's briefing, but because Officer Willis personally witnessed defendant's reckless driving with the child in the car.

persons being chased by an officer though the park." (*Ibid*.) He drove to the other side of the park to cut off the fleeing individuals, made contact with them, and ordered them to stop. They were eventually detained, and a search of the defendant revealed a bag of cocaine. (*Id*. at pp. 1641-1642.) After the arresting officer testified that he detained the defendant because he was "resisting arrest" and that he "had no other basis for detaining [the defendant] aside from the information contained in the radio broadcast," the defendant moved to suppress and interposed a *Harvey-Madden* objection to the admission of the contents of the radio broadcast. (*Id*. at p. 1642.) The trial court found the detention was supported by reasonable suspicion. (*Ibid*.)

The Court of Appeal reversed, stating "None of the pursuing officers testified at the suppression hearing," and there was "no basis upon which the juvenile court could have found the pursuing officers had cause to detain [the defendant]. The only inference which is supported by the evidence is that the pursuing officers had heard the same radio broadcast which [the arresting officer] heard and were responding to the information contained therein. . . ." (*Eskiel S., supra*, 15 Cal.App.4th at p. 1642.) "The record is void of any evidence of the source of the information contained in the radio broadcast. None of the evidence presented at the suppression hearing . . . provided any insight into the origin of the information about a gang fight which was relayed to [the arresting officer] and the other officers. . . . Without a source who can testify to the validity and reliability of the information, it cannot be determined whether th[e] information was sufficient to provide reasonable suspicion to detain [the defendant.]" (*Id*. at p. 1644.)

That is not the case here. Officer Meek testified in detail as to the source of the information communicated to Officer Willis.

12

What defendant's contention boils down to is that the People cannot rely on Officer Meek's testimony, alone, and the prosecutor was required to also call the victim as a witness or introduce some other evidence, such as the 911 call or the victim's cell phone video, at the section 1538.5 hearing.

However, the *Harvey-Madden* rule does not stretch so far. Officer Meek was relying on information from a citizen informant. (See *People v. Ramey* (1976) 16 Cal.3d 263, 269 ["as a general proposition . . . private citizens who are witnesses to or victims of a criminal act, absent some circumstance that would cast doubt upon their information, should be considered reliable"].) Further, the "rule requiring the People to show the basis of the information furnished through official channels, relied upon as proof of probable cause, is not intended to require the production and examination of the informing officer to determine whether factual information he observed and transmitted is correct. The real issue in the premises is whether reliance on the information received is reasonable, not whether the facts related in the information are correct. [Citation.] The sufficiency of the showing on this issue is dependent upon the sufficiency of the evidence to justify the conclusion reliance on such information was reasonable, and not upon the sufficiency of the evidence to justify the conclusion the transmitting officer's observations were correct." (*People v. Poehner* (1971) 16 Cal.App.3d 481, 489; see *In re Richard G.* (2009) 173 Cal.App.4th 1252, 1261 (*Richard G.*) [disagreeing with *Eskiel G.*].)

The record amply demonstrates the information received by Officer Meek was sufficiently reliable. It was furnished to him by the alleged victim, Officer Meek personally observed the victim's cell phone video, he looked through the pole-camera footage to find a vehicle that matched the description given by the victim and shown in the cellphone video, he

13

examined video taken in the area in which the victim said the events occurred and during the time that matched the cell phone video, he had the victim's name and cell phone number, the victim also contacted Officer Meek the day after the incident indicating she "wished to identify the responsible party" and, although she ultimately did not show up, she "agreed to meet" the following week to look at photo lineup.  All of this evidence supports a strong inference that the information supplied in Officer Meek's briefing was not manufactured.  (See *Richard G., supra*, 173 Cal.App.4th at p. 1259 [where "the evidence and the reasonable inferences flowing from it show that the police actually received a telephone report creating reasonable suspicion of criminal wrongdoing, it is not necessary to require strict compliance with the '*Harvey Madden*' rule"]; *People v. Orozco* (1981) 114 Cal.App.3d 435, 444 [The whole point of the *Harvey-Madden* "rule is to negate the possibility that the facts which validate the conduct of the officers in the field are made up inside the police department by somebody who is trying to frame a person whom he wants investigated.  [¶] The best way of negating 'do it yourself probable cause' is to have the officer who received the information from outside the police department testify."].)

Nor does the *Harvey-Madden* rule require an officer, such as Officer Willis, to go back and investigate the veracity of the informing officer's statements.  It is an evidentiary rule premised on the fact that it is reasonable for an officer to rely on information furnished to him or her through official channels.

*Probable Cause to Search the Car*

Defendant contends that even considering Officer Meek's testimony, Officer Willis did not have probable cause to search the car.  Defendant makes two points in this regard.  First, he highlights Officer Willis' testimony

14

that he did not have probable cause to arrest defendant prior to the January 17 reckless driving incident. Second, he asserts "it cannot fairly be said that probable cause nevertheless existed to believe that his vehicle would have contained evidence of that brandishing," and certainly not "twenty days after the reported brandishing."

As to defendant's first contention, Officer Willis' belief that he did not have a sufficient basis to arrest defendant for the December brandishing event is not relevant to the question of whether the information he received through the briefing, in combination with the other things Officer Willis observed, provided sufficient probable cause to search defendant's vehicle. Moreover, Officer Willis was correct in his assessment of the situation, as under section 836 a "peace officer may arrest a person . . . without a warrant" only if the "officer has probable cause to believe that the person . . . has committed a public offense in the officer's presence," "[t]he person arrested has committed a felony, although not in the officer's presence," "[t]he officer has probable cause to believe that the person to be arrested has committed a felony, whether or not a felony, in fact has been committed." (§ 836, subd. (a)(1)-(3).) Here, the crime relayed in Officer Meek's briefing—brandishing a firearm—was a misdemeanor and therefore could not have supplied Officer Willis with justification to arrest defendant without a warrant. (§ 417, subd. (a)(1).)

In support of his second contention, that there was an undue passage of time between the brandishing incident and the reckless driving incident, defendant cites to *People v. Hulland* (2003) 110 Cal.App.4th 1646. Defendant acknowledges *Hulland* "examined probable cause in the context of an affidavit for a search warrant," but maintains "a similar analysis applies to the search conducted in this case."

In *Hulland*, a police officer purchased drugs from the defendant in a "parking lot in a different city" from where the defendant resided, and then waited "52 days before seeking a warrant to search two residences where the defendant allegedly live[d]." (*Hulland, supra*, 110 Cal.App.4th at pp. 1648, 1653.) Although the warrant "was based on stale information," the trial court denied the defendant's motion to suppress on the ground "the officer executed the warrant in good faith." (*Id.* at p. 1648.) The Court of Appeal reversed. While it agreed the warrant was not supported by probable cause since it was based on information which had grown stale by the time the warrant was issued, it concluded the good faith exception did not apply. (*Id.* at pp. 1653, 1656-1657.) With respect to the passage of time, the appellate court stated there was no indication the defendant ever sold marijuana prior to the controlled buy, there was no indication he ever sold drugs out of his home, and there was no proof of ongoing activity to support probable cause to search given the "hiatus between the sale and the search." (*Id.* at p. 1655.)

*Hulland* is readily distinguishable. Not only did that case involve probable cause in the context of an affidavit in support of a search warrant, but the information that served as the basis for the warrant was nearly two months old. Furthermore, in contrast to *Hulland¸* here there was every indication defendant had previously toted a gun along when he drove his car, and the search was of the same car involved in the brandishing incident. Additionally, defendant sped away at a reckless pace when he saw Officer Willis, and when he pulled back into his driveway, his movements gave every indication he was hiding an object under the front seat. All of this provided ample evidence of "ongoing activity" connected to the brandishing incident.

It is true that an officer's generic testimony that he or she observed "furtive" movements by a defendant is not sufficient to establish probable

16

cause to search a car. (E.g., *People v. Superior Court* (*Kiefer*) (1970) 3 Cal.3d 807, 823 [mere furtive movement of occupant in vehicle being chased by officer for traffic violation insufficient to establish probable cause]; *Gallik v. Superior Court* (1971) 5 Cal.3d 855, 859 ["to constitute probable cause for . . . [a] search, a 'furtive gesture' such as a motorist's act of bending over inside his car must be invested with guilty significance either by specific information known to the officer or by additional suspicious circumstances observed by him"].)

However, this is not such a case. Officer Willis had information that three weeks earlier defendant possessed a firearm in his car and threatened another driver with it, Officer Willis personally observed defendant attempt to evade him by taking off at a high speed, and he personally observed the very particularized way in which defendant moved before getting out of his car—actions wholly consistent with attempting to hide a firearm under the front seat. Accordingly, this is not a mere "furtive movement" case. (See, e.g., *People v. Moore* (2021) 64 Cal.App.5th 291, 301-302 [based on totality of circumstances, including the defendant's nervous and furtive conduct, officer had probable cause to search vehicle].)

In sum, neither of defendant's challenges to the sufficiency of the evidence to permit the search of his car withstands analysis.

*Dismissal of the Child Endangerment Count*

After the court ruled on the motion to suppress concerning the firearm counts, the court asked the prosecutor if she would like the court "to make a finding as to Count 3[—the child endangerment count—]or do you want to let it go?" The prosecution confirmed she did want a finding and reserved rebuttal argument.

17

Defense counsel asserted this was not a case of child endangerment because the "child was lawfully with a car seat" as shown on the videos, and Officer Willis' single "reference to this driving on the wrong side of the road" occurred because "[defendant] simply drove around a bus that was pulled over and sticking out in the road to pass [it]." This, counsel maintained, did not rise to the level of child endangerment, noting defendant "wasn't even cited for reckless driving."

The prosecutor responded that based "on the speed, and there is testimony there were lots of turns being made at these high speeds and going in the opposite direction of traffic and blocking this bus," there was "sufficient information to support a child endangerment clause." Further, defendant was "traveling between 50 and 70 miles per hour within feet of vehicles, he wouldn't be able to stop if a vehicle were to pull in front of him" and if there had been "some sort of accident, you know, given the high speeds and erratic driving, that would definitely cause injury to the child."

The court dismissed the charge, stating that "[b]ased on the evidence that was presented, I don't think there was enough evidence to support" it.

On appeal from a magistrate's decision to dismiss at a preliminary hearing, we review the magistrate's legal conclusions de novo, upholding any factual findings if they are supported by substantial evidence. If no controlling factual findings were made, we review the record independently, and if, in carrying out our independent review, we determine the evidence supplied a rational ground for holding the defendant to answer, we must reinstate the charge. (*People v. Plumlee* (2008) 166 Cal.App.4th 935, 938-939, citing *People v. Slaughter* (1984) 35 Cal.3d 629, 639-640.)

Section 273a, subdivision (b) provides, "Any person who, under circumstances or conditions other than those likely to produce great bodily

18

harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health may be endangered, is guilty of a misdemeanor." "[T]he word 'likely' in section 273a does not serve as a measure for making the difficult and imprecise task of predicting future human behavior. Rather, it is merely a measure for determining the risk of present injury created by external and tangible circumstance or conditions." (*People v. Chaffin* (2009) 173 Cal.App.4th 1348, 1352.)

Officer Willis testified that while he endeavored to make a traffic stop, defendant attempted to "avoid contact." While Officer Willis did not activate his lights and siren until after defendant passed the bus and he was almost back at his residence, Officer Willis was "under the assumption" his presence was known to defendant. Officer Willis' dashcam footage shows approximately one minute of a pursuit, in which defendant seemingly makes a series of turns—mostly off camera—ending up back at his residence. Although there is no evidence on the video of speed, Officer Willis testified he was driving up to 60 miles per hour in an effort to catch up to defendant, and he still could not do so. Indeed, for most of the video, defendant is just out of sight. Further, in order to avoid capture, defendant crossed into the other side of the road to get around a bus, which appeared to be pulled over to the side either making a stop or parked. Although defendant "slowed down to make a left turn," he did not come to a complete stop at a stop sign. Finally, defendant pulled into his driveway, Officer Willis pulled in behind him, and approximately 10 seconds passed before defendant rolled down his window and put his hands outside the vehicle.

19

This entire sequence of events did, indeed, occur over a relatively short period of time—but that is the point. The evidence clearly shows he engaged in a high-speed chase in a residential neighborhood in an attempt to evade a traffic stop, not to mention that he did so while carrying a loaded weapon in the car. This was a sufficient showing to proceed on a child endangerment charge.

## DISPOSITION

The order on the motion to suppress and the order dismissing the two firearm counts and the child endangerment count are reversed, and the complaint as to these counts is reinstated.

_____

Banke, J.


We concur:


_____

Margulies, Acting P.J.


_____

Sanchez, J.


A160820, People v. Mayes